JOSEPH J. ROSSEN, APPELLANT, v. FRANK S. RICE, RESPONDENT.—87 S. W. (2d) 213.

St. Louis Court of Appeals.   Opinion filed Nov. 5, 1935.

Motion for rehearing overruled Nov. 19, 1935.

*Levinson, Boisseau & Levinson* for appellant.

*Christy M. Farrar* for respondent.

112

HOSTETTER, P. J.—This suit was instituted in the Circuit Court of St. Louis County, on the 2nd day of September, 1932. It arose out of a transaction between plaintiff and defendant involving a second deed of trust on some real estate located on Lindell Boulevard in St. Louis City, the title to which was in the name of Rose A. Rice, sister of defendant.

The petition is in two counts, both being based upon the same transaction.

In the first count it is alleged that plaintiff on or about March 12, 1931, loaned to defendant the sum of $6,000, which defendant promised to repay to him six months thereafter with interest at six per cent and that defendant at said time delivered to plaintiff as security for the loan a principal promissory note for the sum of $7,000, due September 15, 1931, together with an interest note for the sum of $210, both signed by Rose A. Rice and secured by a second deed of trust on the Lindell Boulevard real estate; that Rose A. Rice was merely a "straw party" for the defendant and received none of the money loaned by the plaintiff, but that defendant received the entire amount; that said debt was not paid at maturity, for which judgment was asked.

In the second count it is alleged that on or about March 12, 1931, the defendant was the owner of the Lindell Boulevard tract, the title to which was in the name of Rose A. Rice, "straw party" for him; that the Lindell Boulevard property was encumbered with a first deed of trust upon which there was a balance due amounting to $41,000; that prior to said date defendant had agreed to trade the Lindell Boulevard property to one Watson, subject to the $41,000 first deed of trust, and also subject to a second deed of trust in the sum of $7,000, which defendant intended to place thereon, and, which Wat-

son agreed to assume and pay; that on said date the defendant, through his agent, requested plaintiff to make him a loan of $6,000 and agreed to give plaintiff as security therefor the said deed of trust which was to be executed by defendant's "straw party," Rose A. Rice; that defendant promised and agreed with plaintiff that if said deed of trust was not paid when due and could not be collected out of the property covered by said deed of trust the defendant would repay the plaintiff the amount advanced by him, together with the interest at the rate of six per cent; that relying upon said promise and agreement of defendant plaintiff did advance to defendant the said sum of $6,000 on the security of said second deed of trust; that said second deed of trust was not paid at maturity and could not be collected out of the property by foreclosure proceedings or otherwise and that defendant has refused to pay the plaintiff the amount so loaned by him after demand and the same is still due and owing and therefore judgment is prayed for $6,000, and interest and costs.

Defendant's answer to the first count was a general denial and to the second count a general denial followed by the following affirmative matters: First, that plaintiff never made any such claim until the amended petition was filed and the claim is not made in good faith; second, that plaintiff voluntarily granted an extension of time to said Watson and released and surrendered his security in the property without consent of defendant and is estopped from making any claim of guaranty and defendant is released from any such alleged promise; third, that the transaction was usurious and any pledge or guaranty thereunder is illegal.

The reply was a general denial.

The evidence disclosed the facts substantially as follows:

On and prior to March 10, 1931, defendant was the owner of an apartment building known as 4332-4342 Lindell Boulevard, St. Louis, Missouri, the title thereto being carried in the name of his sister, Rose A. Rice, a "straw party." Sometime prior to the above mentioned date defendant had agreed to exchange this property with Wilbur I. Watson for a ninety-seven acre tract located on Manchester Road in St. Louis County, on which there was a $30,000 loan. There was a first deed of trust on the Lindell Boulevard property, upon which there was a balance due amounting to $41,000. Watson agreed to assume the payment of this $41,000 deed of trust and further agreed to permit defendant to place a second deed of trust on the property for $7,000, which Watson was also to assume and agreed to pay. At this juncture defendant approached D. Samuel Wise, a real estate dealer, and advised him about the impending deal with Watson, and asked Wise if he knew where he could obtain some money on the second deed of trust he expected to place on the Lindell Boulevard property, and, on Wise expressing doubt about raising money on a

second deed of trust with such a large first mortgage coming due at the same time, defendant suggested that he see this brother-in-law, Mr. Rossen, about making the loan, which Wise promised to do. After some·negotiations between them, Wise drew up a paper entitled ''Option to Procure Loan'' whereby defendant gave Wise an ''irrevocable option for two days to make or procure'' for him ''a loan . . . . to be secured by second deed of trust'' on said property. Said ''Option to Procure Loan'' also recited ''I agree to ratify and confirm whatever you, your agent, or attorney, may do separately or jointly in the premises'' and also ''agree to pay to Wise, or The D. Samuel Wise Realty Company, a commission of $1,000'' for making or procuring this loan. Defendant signed his 'sister's name to this agreement, but she never saw it at any time and knew nothing about it. Plaintiff and Wise were brothers-in-law, having married sisters, and Wise theretofore had no business relations with plaintiff, but at once got in touch with him about making the loan, and plaintiff, with some reluctance, agreed with Wise to make the loan of $6,000 on the deed of trust in question, and Wise communicated 'this to the defendant. Thereupon, defendant had his sister, Rose A. Rice, to execute a principal note for $7,000, due September 15, 1931, and also an interest note for $210, and also a second deed of trust on the Lindell Boulevard property, securing the payment of the two notes, which was duly recorded. The pending deal between defendant and Watson was then closed on March 17, 1931, and the next day, March 18, 1931, defendant went to Wise's office to close up the loan transaction on the second deed of trust.

There is a radical dispute between defendant on the one side, and plaintiff, Wise, and Albert Eisenberg, an employee in Wise's office, on the other, as to what took place in Wise's office at that time. The defendant at all times refers to the transaction as a sale of the second deed of trust by himself to Wise and a purchase of it by the plaintiff from Wise, while the other three refer to it as a loan.

The actual facts, according to the testimony of the three (plaintiff, Wise and Eisenberg), are that plaintiff was quite reluctant to part with any money on the second deed of trust and stated that he did not consider the property to have sufficient value to justify it. Defendant, had never met plaintiff until this occasion in Wise's office. Defendant had been there about a half hour before plaintiff came in. It was expected that plaintiff would bring a certified check for $6,000, in accord with Wise's directions, but he didn't bring it, because, since Wise had taken up the matter of him furnishing the $6,000 to make the loan, he had investigated the Lindell Boulevard property himself and had reached the conclusion that its value was not any more than the first deed of trust and that he did not want to make the loan at all under these conditions.

So, substantially, the testimony of plaintiff, Wise and Eisenberg was to the effect that defendant, seeing that the deal was about to fall through, spoke up and said that he had gotten an opportunity to make a nice little money by taking this $7,000 deed of trust, only putting in $6,000, and that Watson was also putting in good money in the Lindell Boulevard property and was assuming the $7,000 deed of trust and that he (defendant) would stand good for every nickel of the $6,000 and interest; that plaintiff would not lose one cent of the money; that if it was not paid when due, at the end of the six months, he would pay back to plaintiff the $6,000 and the interest at six per cent; that if the deed of trust was not paid off when due and plaintiff could not collect it by foreclosure proceedings then he (defendant) would repay to plaintiff all the money he had invested in it with interest at six per cent and also told plaintiff: ''You are lending this money to me,'' and that, on this assurance, plaintiff finally agreed to go ahead with the transaction.

It developed that there was $1230 interest payment which would be due on the first deed of trust on the Lindell Boulevard property within a few days and plaintiff then gave his check for $4770, and, after this interest payment of $1230 on the first deed of trust was made, then plaintiff gave another check for $1230 to fill out the $6,000, all of which defendant received.

There was a mechanic's lien, then in suit, against the property at that time and defendant gave a written letter to Wise in which he personally guaranteed to take care of the mechanic's lien, but there is no evidence that plaintiff ever had any knowledge of the existence of this letter.

Defendant in his testimony first described himself as being a shoe manufacturer, but, on cross examination, admitted that he had been actively engaged in the real estate business since 1920 and had made a good many deals; that he usually caused the title to his property to be in a straw party's name because it avoided any personal liability on his part.

In the two days' written option contract between defendant and Wise there was a provision for the payment of a commission of $1,000 by defendant to Wise for procuring the loan, but on cross examination of defendant he admitted that Wise, before the closing of the loan transaction with plaintiff, had asked him (defendant) to allow him $1500 instead of $1,000 off the deed of trust and had asked him to give his personal check for the additional $500, saying that he wanted plaintiff (Mr. Rossen) to pay the $6,000 and wanted him (defendant) to pay the $500 by his personal check the following day, after the making of the loan; that he gave his personal check to Wise for the $500 the day following the closing of the loan.

There was nothing in the evidence to show that plaintiff knew any-

thing about this $500 transaction. This $500 check given by defendant to Wise was offered in evidence, bearing this notation: "Commission on sale of second deed of trust on 4332-4342 Lindell Boulevard." Wise testified that this notation was not on this $500 check when he cashed it, but evidently had been put on since.

It was conceded that the money which defendant received of plaintiff was the only consideration that anyone ever received for this second deed of trust. When the notes secured by the second deed of trust became due in September, 1931, they were not paid and Wise asked defendant if he was going to take up the deed of trust. Defendant refused to do this and the deed of trust was foreclosed. The plaintiff himself had been made trustee in this second deed of trust.

At the foreclosure sale under the second deed of trust, which was had on October 12, 1931, Wise was the only bidder, at $500, which was properly credited on the principal and interest notes, leaving an unpaid balance amounting to $6821.82. Thereupon, plaintiff, as trustee, delivered the trustee's deed to Wise, the purchaser, but Wise's name was not put in the deed as grantee, but was left blank. Plaintiff never knew anything more about the property after that time and had nothing further to do with it. Shortly subsequent thereto plaintiff made demand on both Rice and his sister, Rose A. Rice, for the payment of the balance, after giving credit for the $500 bid at the foreclosure sale, but nothing was ever paid thereon.

Defendant denied any knowledge of the foreclosure under the second deed of trust and denied that he was asked to pay the notes after default occurred.

There was testimony to the effect that defendant went to Wise's office, before the property was advertised for sale under the second deed of trust, and asked that the property be not advertised as a default on the part of his sister, Rose A. Rice; that, while she had no property, but that she was a prominent church worker and that it would be damaging to her that it be so advertised and asked that it should be advertised as a default of her vendee.

Over the objection and exception of defendant, the court permitted the plaintiff to prove, during Wise's cross examination, that Wise took this trustee's deed, made out in blank, and, by using it, made a deal with Watson whereby Watson deeded to Wise a 280 acre farm in Scott and Mississippi Counties, which Wise later sold for $250; that, in this subsequent deal with Watson, Wise released Watson from any liability on the second deed of trust on the Lindell Boulevard property, which Watson had assumed and agreed to pay and procured from the owner of the $41,000 first deed of trust an extension of time for the benefit of Watson. There was no showing whatever, that, in thus dealing with Watson, Wise was acting for the plaintiff or that plaintiff in any way was benefited therefrom. On the con-

trary the evidence was clear and emphatic that after Wise purchased the Lindell Boulevard property at the foreclosure sale, under the second deed of trust, plaintiff had no knowledge whatever of what transpired later, and never heard of Wise's dealings with Watson or his acquiring the farm of 280 acres, until after this suit was brought, when it was developed on Wise's deposition being taken.

At the conclusion of the plaintiff's evidence in chief the court gave an instruction in the nature of a demurrer to the evidence as to the second count of plaintiff's petition. The defense then proceeded, and, at the conclusion of all the evidence, the court submitted the case to the jury on the first count, but instructed the jury to return a verdict for defendant on the second count.

Error is assigned by plaintiff as to the action of the court in giving an instruction in the nature of a demurrer to plaintiff's evidence as to the second count and in requiring a verdict to be rendered on each separate count; and also in respect to the admission of testimony as to actions on the part of Wise, which were not done on the authorization of plaintiff, and, in particular, on all of his acts and transactions after the foreclosure sale of October 12, 1931; also the alleged release by Wise of Watson's obligation to pay the second deed of trust; also a letter, or letters, alleged to have passed between Watson and Wise; and the giving of instruction No. 3 at the request of the defendant.

We are of the opinion that the trial court erred in giving the instruction in the nature of a demurrer to plaintiff's testimony as to the second count at the close of plaintiff's evidence in chief, and in requiring the jury to return a separate verdict on each count. It is well settled that where there are separate and distinct causes of action joined in the same suit, but stated, as they properly should be, in different counts, there should, of course, be a separate finding on each count; but, where, as in the instant case, there is but one cause of action which the plaintiff states in different counts, to meet the different constructions of the evidence which might be developed, a general verdict may properly be given. [Lancaster v. Connecticut Mut. Life Ins. Co., 92 Mo. 460, 5 S. W. 23; Brinkman v. Hunter, 73 Mo. 172, Am. Rep. 492; Lange v. N. Y. Life Ins. Co., 254 Mo. 488, l. c. 511 (and cases there cited), 162 S. W. 589.]

We likewise are of the opinion that the court erred in permitting defendant to introduce testimony in respect to transactions on the part of Wise after the foreclosure sale of October 12, 1931, including the alleged release by Wise of Watson's obligation to pay the second deed of trust, the letter, or letters alleged to have passed between Watson and Wise, the alleged procurement of an extension of time for Watson from Nohl, and the acquisition of the 280 acre farm by Wise from Watson, on the ground that there was no showing that

Wise was acting as agent for plaintiff in his dealings subsequent to October 12, 1931, and consequently his acts and doings would not be admissible as against plaintiff and would tend to seriously prejudice the jury against plaintiff.

Wise had bought the property under the second deed of trust for $500 at the foreclosure sale held on October 12, 1931. The plaintiff himself, being trustee in said second deed of trust, gave a trustee's deed to Wise and credited the mortgage notes with the $500 bid by Wise. Wise, of course, had a right to receive the trustee's deed and do with it as he pleased, insofar as plaintiff was concerned. Wise testified that after the foreclosure sale of October 12, 1931, he never at any time told plaintiff anything about his subsequent transactions with respect to the trustee's deed, or in respect to his dealing with Watson or Nohl, the owner or controller of the $41,000 first deed of trust and the property, and that plaintiff had no interest in his (Wise's) business and denied emphatically that in any such subsequent transactions he was acting for or representing plaintiff in any matter whatsoever, but was trying to get some salvage on the $1000 which defendant had agreed to pay him for procuring the $6,000 loan. Plaintiff testified to the same effect and disclaimed having had any knowledge of any such transactions. There was no evidence from any source that in these subsequent dealings and transactions Wise was acting as agent for plaintiff.

The only theory on which testimony as to these acts, transactions and dealings of Wise could be competent evidence against plaintiff would be that Wise was acting as agent for and at the request of plaintiff and, in the absence of any showing to that effect, the putting in of such testimony over objection was improper, and, we think, highly prejudicial to plaintiff.

The court gave instruction No. 3, at the request of defendant, which is as follows:

"The court further instructs you that under the law and evidence in this case the plaintiff is not entitled to any judgment against the defendant, Frank Rice, upon the $7,000 note and deed of trust signed by Rose A. Rice mentioned in the petition and offered in evidence by the plaintiff."

The instruction is challenged by plaintiff and, we think, rightfully so. While the instruction as an abstract proposition of law is correct, but its inclusion in this case under the pleadings is erroneous and a misfit and is clearly calculated to confuse and mislead the jury to the detriment of plaintiff. This is not a suit on a $7,000 note, or on any note. Plaintiff in his petition does not ask for a judgment based on a note. No claim is advanced by plaintiff that he is entitled to a judgment on any $7,000 note or on any note. The instruction given for plaintiff clearly outlines his theory on which he claims a judg-

ment. Plaintiff's theory, briefly stated, is that if defendant promised that if the notes secured by the second deed of trust were not paid when due and could not be collected from the property on foreclosure, then he would repay to plaintiff the $6,000 actually advanced by him, together with six per cent interest thereon.

It is contended by defendant that the statute of frauds, the promise to pay the debt of another, is a barrier to plaintiff's recovery. We do not agree with this contention. It is not claimed by plaintiff that defendant promised to pay the debt of his sister (the maker of the notes and the second deed of trust) nor of Watson, who had assumed the payment of said notes. Neither is it claimed by plaintiff that defendant agreed to pay the notes. Defendant's agreement, according to the testimony of plaintiff, Wise and Eisenberg, was to reimburse plaintiff for the $6,000 in money, which he was parting with, and defendant was receiving, together with six per cent interest thereon, in the event the second deed of trust notes were not paid at maturity and could not be collected out of the property. Had defendant complied with this alleged agreement and paid back to plaintiff his $6,000 and interest it would not have extinguished the debt evidenced by the notes and the liability of Watson and of defendant's "straw party" sister would have remained just the same as before.

But even if the alleged agreement made by defendant in Wise's office could be construed as being one to answer for the debt of another, it does not follow that he could invoke the statute of frauds to defeat a recovery under the facts of the instant case. Defendant received a substantial benefit. He wanted $6,000 and wanted it badly. He knew plaintiff had the $6,000. Plaintiff had made an independent investigation, on his own "hook," of the property and had concluded, and rightly so, that there was no value in it above the first mortgage debt. So, when plaintiff reached Wise's office he was cold on the deal, and didn't bring any certified check for $6,000, as he had been requested to do by Wise, who was, under the two day option contract, defendant's agent. He evidently sensed that he was, in popular parlance, in imminent danger of being taken to a "trimmin'." So that defendant set about to reassure plaintiff, and, if the version of his statements as testified to by plaintiff, Wise, and Eisenberg, be correct, he forgot the friendly shelter of the moneyless sister and created a personal liability on himself whereby he acquired plaintiff's $6,000. The reception of the $6,000 was clearly a benefit to defendant and even if his commitment operated so as to answer for the debt of another, it would still be outside the statute of frauds. [Brown et al. v. Brown, 47 Mo. 130; Hale v. Stuart, 76 Mo. 20; Winn v. Hillyer, 43 Mo. App. 139; Armstrong v. First National Bank (Mo. App.), 195 S. W. 562; Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576, 67

A. L. R. 489; Robertson Bros. v. Garrison's Estate (Mo. App.), 21 S. W. (2d) 202; Mertens v. McMahon (Mo. App.), 28 S. W. (2d) 456.]

It results from the views hereinbefore expressed that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered. *Becker* and *McCullen, JJ.*, concur.