John A. ROBINSON et al., Respondents,

v.

RIVERSIDE CONCRETE, INC., et al., Appellants.

No. KCD 27013.

Missouri Court of Appeals, Kansas City District.

Nov. 29, 1976.

Motion for Rehearing and/or Transfer Denied Dec. 23, 1976.

Howard W. Bevins, Michael J. Drape, Knowlton & Drape, Kansas City, for appellants.

Stoup & Bohm, Arthur H. Stoup, Thomas E. Thompson, Kansas City, for respondents.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

This appeal presents the question of the sufficiency of the jury's verdict to support a judgment for actual and punitive damages. John Robinson and his wife brought suit against Riverside Concrete, Inc., Ernest Mountjoy, Mary Mountjoy, Frank Sambol, Lake Ozark Concrete, Inc., and Ted Mountjoy for accounting, fraud, conversion and replevin. The jury returned a verdict for "damages" in the amount of $43,300, interest of $17,350, and attorney fees of

$21,000, being the total sum of $81,650, against Riverside, Ernest, Mary and Sambol. The jury also returned a verdict against the same defendants for punitive damages in the sum of $75,000. Judgment was entered according to the verdict, and Ernest Mountjoy, Mary Mountjoy and Riverside Concrete, Inc., have appealed therefrom. The dispositive issue raised on this appeal is the insufficiency of the verdict to support the judgment. Reversed and remanded.

Ernest and Mary Mountjoy were the sole stockholders of Riverside Concrete, Inc. Feeling the need for capital with which to operate such business, the Mountjoys arranged to borrow $50,000 from the Robinsons. A promissory note in that amount was executed by the Mountjoys in their corporate officer capacities. The Mountjoys simultaneously executed a loan agreement in their corporate capacities and in their individual capacities by which the undertaking of Riverside was guaranteed and by which they agreed to indemnify the Robinsons against any loss. The agreement provided a security agreement was to be executed to convey a security interest in certain equipment and vehicles used in the concrete business to Robinson. Such agreement was in fact executed.

It was further agreed Riverside would not declare or pay any dividend, increase its capital stock or retire or exchange any of its capital stock without the written consent of Robinson. Ernest was also to receive $250. per week for services to Riverside and such salary was not to be increased nor was he to be paid any other remuneration without the written consent of Robinson.

In addition to interest on the note, Robinson was to receive 43% of the annual net profits of Riverside, less agreed upon deductions, and he and his agents were to have the right to examine Riverside's books and income tax returns at any time. Riverside was to pay all of Robinson's expenses including legal expenses incurred in connection with the enforcement of the loan agreement.

Robinson and his wife filed suit following default on the note and following the failure of Riverside to pay the 43% of net income. In Count I of such suit the execution of the $50,000 note and loan agreement was alleged, together with the provisions of such agreement, together with the allegation no payment had been made and no accounting had been provided. Count I prayed for an accounting and that Riverside be required to pay Robinson such amount as determined to be 43% of net income. Such count further pleaded fraudulent and malicious conduct on the part of the Mountjoys to deplete the assets and profits of Riverside and alleged they took the items covered by the security agreement and devoted them to their own use. It was alleged such actions were for the sole purpose of defrauding Robinson and by reason therefor, Robinson was entitled to punitive damages in the sum of $500,000.

Count II was based upon the security agreement executed by Riverside and alleged the property covered thereby was in danger of being lost to Robinson unless taken from the possession of Riverside. The prayer was for recovery of the property and $5,000 damages for its return.

Count III was against Frank Sambol, brother-in-law of Ernest Mountjoy, and alleged Sambol was acting in concert with the Mountjoys to convert the property covered by the security agreement to such use as to defeat the rights of Robinson in the same. The prayer was for $50,000 plus interest and costs.

Count IV was against Lake Ozark Concrete, Inc., and Ted Mountjoy, the owner of Lake Ozark. Ted is the son of Ernest and Mary. This Count alleged certain of the property covered by the security agreement given by Riverside was through the conspiracy and acts of the three Mountjoys placed in the possession of Lake Ozark which converted the same to its own use. Damages in the amount of $50,000 were prayed.

Count V incorporated by reference the allegations of the first four counts and further alleged that all the defendants did

unlawfully and fraudulently conspire together to cheat and defraud the Robinsons and pursuant to such scheme, the property covered by the security agreement would be turned over to Sambol, Lake Ozark and Ted and such property would be used, converted and sold and the proceeds derived from the sale would be divided among the defendants. This count concluded with a prayer for $50,000 actual damages and $500,000 for punitive and exemplary damages.

Following a lengthy trial, which covers some 840 pages of transcript, the court gave the jury its instructions. The following verdict directing instructions were given:

INSTRUCTION NO. 3 authorized a verdict against Riverside on the principal amount of the note.

INSTRUCTION NO. 6 authorized a verdict against Ernest and Mary on the guarantee agreement and the loan agreement.

INSTRUCTION NO. 8 authorized a verdict against Riverside for transferring and conveying some or all of the secured concrete equipment to Lake Ozark.

INSTRUCTION NO. 10 authorized a verdict against Ernest for conversion of secured property or for transfer of the secured property to delay or hinder his creditors.

INSTRUCTION NO. 12 authorized a verdict against Mary for aiding and abetting Ernest in the transfer of secured property or for her intentional participation in transfer of the secured property to hinder or delay creditors.

INSTRUCTION NO. 14 authorized a verdict against Sambol for intentionally aiding and abetting the transfer of secured property for the purpose of hindering, delaying and defrauding Robinson.

INSTRUCTION NO. 16 authorized a verdict against Lake Ozark for knowingly participating in the conversion of secured property.

INSTRUCTION NO. 19 authorized a verdict against Ted for knowingly participating in the conversion of secured property.

INSTRUCTION NO. 21 was MAI 4.01, the measure of damages.

INSTRUCTION NO. 22 was MAI 10.03 authorizing the award of exemplary damages.

Instruction No. 25 was the form of verdict instruction and is set out in full hereafter:

### INSTRUCTION NO. 25

You are instructed that nine or more jurors may return a verdict for either party in this case. If all of you agree upon a verdict, your foreman alone will sign it, but if your verdict is returned by nine, or more, and less than twelve jurors, your verdict must be signed by all of the jurors who agree to it.

### Forms of Verdict

If all of you agree upon a verdict in favor of the plaintiffs for the principal amount on the note and guarantee agreement, and against defendants Ernest W. Mountjoy, Mary Mountjoy and Riverside Concrete, Inc., it may be in the following form:

"We, the jury, find the issues in favor of the plaintiffs and against defendants (here insert the names of defendants against whom you find) and assess their damages at $_____ (stating the amount.)

_____Foreman."

If all of you agree upon a verdict in favor of the plaintiffs for both principal amount and interest on the note and guarantee agreement, and against defendants Ernest Mountjoy, Mary Mountjoy and Riverside Concrete, Inc., it may be in the following form:

"We, the jury, find the issues in favor of the plaintiffs and against defendants (here insert the names of defendants against who you find) and assess their damages at $_____, and assess interest at $_____, being the total sum of $_____ (stating the amount).

_____Foreman."

If all of you agree upon a verdict in favor of the plaintiffs for principal

amount, interest and attorney's fees on the note and guarantee agreement, and against defendants Ernest Mountjoy, Mary Mountjoy and Riverside Concrete, Inc., it may be in the following form:

"We, the jury, find the issues in favor of the plaintiffs and against defendants (here insert the names of defendants against whom you find) and assess their damages at $_____, and assess interest at $_____, and assess attorney's fees at $_____, being the total sum of $_____ (stating the amount).

_____Foreman."

If you find the issues in favor of plaintiffs under Instructions numbered 8, 10, 12, 14, 16, 19, and find that plaintiffs are entitled to actual damages only, your verdict may be in the following form:

"We, the jury, find the issues in favor of plaintiffs and against defendants (here insert the names of defendants against whom you find) and we assess plaintiffs' damage at $_____ (stating the amount).

_____Foreman."

If you find for plaintiffs and against one or more defendants and if you further find that plaintiffs are also entitled to punitive damages, then your award of punitive damages shall be in the following form:

"We, the jury, find the issues in favor of plaintiffs and we find that plaintiffs are entitled to punitive damages against the following defendants (here insert the names of defendants against whom you find), in the following amount $_____ (stating the amount).

_____Foreman."

YOU MAY NOT AWARD PUNITIVE DAMAGES AGAINST ANY DEFENDANT UNLESS YOU HAVE ALSO AWARDED ACTUAL DAMAGES AGAINST THAT SAME DEFENDANT.

If you find the issues against the plaintiffs and in favor of all defendants, then your verdict shall be in the following form:

"We, the jury, find the issues in favor of all defendants.

_____Foreman."

If less than twelve jurors return a verdict in this case, you should begin your verdict with the words:

"We, the undersigned jurors, find," etc., instead of "We, the jury, find," etc.

THESE FORMS ARE GIVEN FOR GUIDANCE ONLY AND YOUR VERDICT SHOULD BE WRITTEN ON A SEPARATE PAPER, AND NOT ON ONE OF THESE INSTRUCTIONS.

Converse instructions were given on behalf of the various defendants.

The jury returned the following verdicts:

"We, the jury, find the issues in favor of the plaintiffs and against the defendants Ernest Mountjoy, Mary Mountjoy, Riverside Concrete, Inc., and Frank Sambol, and assess their damages at $43,300 and assess interest at $17,350, and assess attorney's fees at $21,000, being the total sum of $81,650.

/s/ Wayne L. Lucas, Foreman."

"We, the jury, find the issues in favor of plaintiffs and we find that plaintiffs are entitled to punitive damages against the following defendants: Ernest Mountjoy, Mary Mountjoy, Riverside Concrete, Inc., and Frank Sambol, in the following amount: $75,000.

/s/ Wayne L. Lucas, Foreman."

No question is raised on this appeal concerning the sufficiency of the evidence to support any of the instructions.

It should be noted at the outset the jury was instructed they could return a verdict in favor of Robinson for the principal amount of the note, together with interest and attorney fees, and for damages for the conversion of property covered by the security agreement. No motion to require Robinson to elect which of these remedies he would pursue was filed. Since the parties have not raised any question of Robinson pursuing a remedy on both the note and

for conversion of property covered by a security agreement to secure such note, this court does not pass on the propriety of such action. Neither have the parties raised any question concerning the applicability of the Uniform Commercial Code, 400.1 et seq., RSMo 1969, and that question likewise is not passed on herein.

The sole question raised by Ernest, Mary and Riverside, the only parties appealing, concerns the verdict returned by the jury. These parties contend the verdict does not definitely show the jury found against Ernest, Mary, Riverside and Sambol for damages for conversion or for the transfer of secured property. They contend the verdict actually is based on the principal amount due on the note, together with interest and attorney fees. The contention proceeds that since the verdict was for the principal of the note, this is a finding of a breach of contract. The argument concludes with the well recognized doctrine that a finding of a breach of contract will not support a finding for punitive damages. These parties are correct in their attack on the verdict but their reasoning does not go to the basic defect.

Robinson counters such argument by stating the jury actually found under the conversion or transfer of secured property instructions. He further contends that by spelling out interest and attorney fees in addition to the amount of "damages" the jury simply gave a breakdown of how they arrived at the total amount of damages on this fraud theory. Robinson's claim further illuminates the fatal flaw. This court cannot determine the jury's basis or theory of finding for the respondent.

■ The general rule is announced in *Smith v. Piper*, 423 S.W.2d 22, 27[17,18] (Mo.App.1967) that punitive damages do not lie for breach of contract. Thus, if the verdict is construed to be a finding on the contract theory that Robinson is entitled to the principal amount due on the note, together with interest and attorney fees, such verdict could not support a verdict for punitive damages. Thus, the first question to

be resolved is the determination of whether the jury found on the note or the conversion tort theory. The crux of this case is that this question cannot be answered because of the unclear verdict which does not manifest the jury's intent.

■ Although Robinson did not seek a judgment in his petition for the principal amount due on his note, he did introduce evidence as to the principal amount due and the amount of interest and attorney fees. Of course, such evidence supported the giving of the instruction authorizing a verdict against Riverside, Ernest and Mary on the principal amount of the note and on the loan and guarantee agreement.

The rules by which a court considers a verdict to see if it can determine the intent of the jury are fully set out in *McIlvain v. Kavorinos*, 212 S.W.2d 85 (Mo.App.1948). Fully consistent with the rules set out in such case is the statement in *Thorne v. Thorne*, 350 S.W.2d 754, 757[1–3] (Mo.1961): "It has been stated that the courts will construe a verdict liberally in an effort to ascertain the jury's intent. 53 Am.Jur., Trial, § 1052, p. 716. And, of course, the court considers a verdict to see if it can find a reasonably clear intent expressed therein, though perhaps inartfully expressed." The court further stated at Page 758, "[c]ertainly, the verdict of a jury must be reasonably clear and definite, and it must contain at least the substance of the legal requirements."

In *Ralston Purina Company v. Kennedy*, 347 S.W.2d 462, 466 (Mo.App.1961) the court stated: "On the question of certainty and definiteness of a verdict we find this statement in 89 C.J.S. Trial, § 496, pp. 157, 158: 'However, the verdict of the jury, to serve as a basis for a judgment, should be clear, intelligible, consistent, and certain; and it should import a definite meaning free from ambiguity and should show just what the jury intended'."

It is further stated in *Boone v. Richardson*, 388 S.W.2d 68, 76[14–16] (Mo.App. 1965): "The parties were entitled to the

unconditional judgment of the jury, rather than a court's interpretation of its finding . . . ."

To consider the verdict returned, it is first apparent the verdict does not follow the directions for use of the forms of verdict given. The verdict conforms in all respects with the third verdict form listed in Instruction No. 25 except for the inclusion of a finding against Sambol. This instruction advised the jury that form was to be used only if they found against Ernest, Mary and Riverside. That form also advised the jury they were to use it if they found in favor of Robinson for the principal amount, interest and attorney fees on the note and guarantee agreement. It is conceded by all parties that Sambol had no connection with the note or the guarantee agreement, and, of course, there was no instruction given which would authorize a verdict against Sambol on either the note or the guarantee. The only instruction authorizing a verdict against Sambol was Instruction No. 14 which submitted the tortious acts of conversion or unlawful transfer of secured property. A finding against Sambol should have been in the form of verdict given to the jury in case they found the issues in favor of Robinson under Instruction Nos. 8, 10, 12, 14, 16 or 19. That form of verdict made no reference whatever to principal amount, interest or attorney fees, but called for the assessment of damages in one lump sum.

■ If the verdict is to be construed as strictly a finding on the balance due on the note, then the finding against Sambol must be disregarded. However, the only basis on which this express finding against Sambol could be disregarded would be to arbitrarily ignore the express finding which the jury made against him. To properly construe the jury's verdict, the entire verdict must be read and considered without arbitrarily adding or omitting express findings which the jury used.

In this instance, to give full effect to the express finding on the issues which the jury made, it must be concluded the jury found generally in favor of the Robinsons and against Ernest, Mary, Riverside and Sambol. To make a finding against Sambol the jury could not have been making a pure finding on the note.

On the other hand, after the jury made its express finding against Ernest, Mary, Riverside and Sambol, it awarded the sums of money it found to be due on the note, plus the interest and attorney fees.

■ Thus, although the jury made an express finding against those liable on the note and guarantee agreement, it also expressly found against one who was not a party to these agreements.

The conclusion seems to be inescapable to this court that the verdict returned by the jury was not one authorized by the court and it is impossible to determine the intent of the jury from the verdict they did return. Because the jury commingled a finding on the note with a finding against one not liable thereon, the verdict is ambiguous.

■ To surmise on what the jury intended and ignore what it said would bring a dangerous intrusion upon the fundamental concept of our system of justice which intrusts to the jury the sole duty to find the facts. *Johnson v. Girvin's Estate*, 370 S.W.2d 163[2, 3] (Mo.App.1963). It was further stated in *Johnson*, ". . . we may not speculate upon what a jury meant by what it said." 370 S.W.2d 167[2, 3].

■ It should be apparent that any construction of this verdict would involve surmise and speculation as to what the jury meant. Because a court cannot speculate as to what a jury meant, a verdict which requires speculation to determine its meaning cannot stand. If a verdict is not reasonably clear and definite, it cannot support a judgment entered thereon. *Thorne v. Thorne, supra*. In that circumstance the judgment must be set aside.

It follows that if the verdict here is not definite and certain then it cannot be said that the jury found for Robinson on any tort theory which would support a verdict

for exemplary damages. For that reason, the verdict and judgment for exemplary damages may not stand.

■ It may be observed that the jury in this case was unquestionably confused by the large number of instructions, the number of parties, and the number of forms of verdict. It should also be noted Robinson submitted, rightly or wrongly, two distinct and separate causes of action, one on the note and the other on the fraud theory. Yet the jury was not instructed to return a verdict on each of these separate and distinct causes of action. It has long been held in this circumstance there must be a separate finding on each cause of action. *Rossen v. Rice,* 230 Mo.App. 109, 87 S.W.2d 213 (1935).

■ Robinson contended in oral argument that MAI 36.09 had been used to submit the issue concerning the note, and MAI 36.12 had been used to submit the issue of actual and punitive damages on the tort theory. These forms would not be appropriate to be used in a proper case when two separate and distinct causes of action are submitted without modification to require a jury to make a finding with respect to each cause of action. It should be further noted MAI 36.09 does contain a form allowing the jury to find for the defendant after the form finding for the plaintiff on the note, but this was omitted. Likewise, MAI 36.12 is not followed exactly because the form did not require the jury to name each defendant and list the amount of punitive damages assessed against that defendant.

■ A further source of confusion in the instructions was undoubtedly the fact the only form given to the jury to find for any of the defendants was the very last form which was appropriate to be used only in case the jury found in favor of all the defendants. Certainly, with separate submissions against multiple defendants, the jury should have been given appropriate forms by which they could express their finding with respect to each defendant as well as with respect to each separate cause of action.

Robinson urged on oral argument the jury simply followed counsel's final argument and found under the tort submission, but spelled out the method by which they arrived at the amount of damages. This ignores the form of verdict which they followed and which plainly told them it was to be used if they found for the principal amount of the note.

■ Robinson also argues a finding for him implies a finding by the jury adverse to all other claims submitted. It is true a finding can sometimes be made by implication—such as when the jury returns a verdict on a claim but does not return a verdict on a counterclaim. In that situation, if the verdict on the claim necessarily constitutes a determination of the counterclaim, no express verdict is required. *Commercial Nat. Bank of Kansas City, Kan. v. White,* 254 S.W.2d 605, 608 (Mo.1953). However, such rule cannot be applied in this case because the verdict returned is ambiguous since it cannot be determined whether the jury made a finding on the note or on the conversion claim. Even if the verdict were not ambiguous, a finding on the note issue would not necessarily constitute a finding on the conversion or transfer of the security issue.

■ Likewise, it cannot be held the jury found for or against the other parties not mentioned. The verdict must be responsive to all material issues and it should find the issues for or against the respective parties. *Albrecht v. Piper,* 164 S.W.2d 105 (Mo.App.1942). Further, a judgment entered against a party not based upon a verdict is in excess of the power of the trial court. *Stafford v. Far-Go Van Lines, Inc.,* 485 S.W.2d 481, 492 (Mo.App.1972). Where a verdict cannot be fairly resolved into a definite finding for either party, it will not support the entry of any judgment. *Boone v. Richardson,* 388 S.W.2d 68 (Mo.App.1965).

For all of these reasons, the verdict returned in this case will not support a ver-

dict in favor of or against any party to this action.

■ Robinson makes a final contention that the jury must have found under the tort theory because it awarded punitive damages and the instructions clearly stated punitive damages could not be awarded unless actual damages were awarded against the same defendant. Again, the answer is two-fold. First, the verdict is ambiguous. Second, the form of verdict used contained the words "assess their damages." The jury could well have understood the damages found in the verdict were sufficient to support punitive damages.

The anomaly is contained in MAI to require the jury to state they assess damages when they are actually finding the amount due on a note. While this may be technically correct from legal considerations, it could well have produced confusion to this lay jury.

However, this verdict may not be made clear by considering this possible confusion because it remains ambiguous.

One other matter which may occur on retrial involves the attempt of Ernest to show a payment of $4,800 on the $50,000 loan. This, together with a $5,000 payment which was admitted, would have made a credit of $9,800. However, Ernest had not pleaded any payment of $4,800 nor any facts to show he was entitled to credit for this amount, and when he attempted to do so during trial, the court refused permission. There is some confusion in the brief as to whether the claim concerning the $4,800 was in the nature of a counterclaim or as a credit for payment. However, there will be ample opportunity before another trial for Ernest to amend his pleadings. At that time, the court can determine whether a counterclaim or credit for payment is claimed and can properly rule on any issue arising from such amendment.

■ Because the verdict of the jury is not definite and certain, the judgment is reversed and the cause is remanded for a new trial as to all parties, including those who did not appeal.

PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD and SOMERVILLE, JJ., concur.

SHANGLER, J., concurs in separate concurring opinion in which PRITCHARD, C. J., and SWOFFORD and SOMERVILLE, JJ., concur.

WASSERSTROM, J., dissents in separate dissenting opinion.

SHANGLER, Judge (concurring).

I concur in the premise of the principal opinion that the verdict of the jury is inconclusive and does not lend itself to transmutation into a judgment by judicial construction. I think it expedient, however, to allay the criticisms of the dissent which, I respectfully would show, are sinuous and elusive.

The principle opinion concludes that the verdict for actual damages is faulty as a finding on the balance due on the note because Sambol, against whom it was also returned, was not an obligor on that undertaking; and that the verdict for punitive damages is faulty because there is no jury return for actual damage for tort to which that finding can relate. These deficiencies, the opinion explains, result from a failure of the instructions.

The dissent renders judgment for the plaintiff on the amount of the note, interest and attorney fee by striking Sambol from the verdict as surplusage, renders judgment for punitive damages on the verdict of $75,-000 and renders judgment for $1.00 actual damage for conversion on the premise that the punitive damage award implies a tort recovery in at least a nominal amount. This it does on two unacceptable assumptions. The first, "that it makes no difference whether the award of actual damages [$81,650—the award on the note balance, interest and attorney fee] be considered to have been made for breach of contract or

for commission of a tort". The second, that an appellate court may weigh the evidence to arrive at the intent of the jury as a basis for entry of judgment.

■ As to the first, of course, it makes all the difference whether the $81,650 damages award was for the breach of the note; if so, the $75,000 punitive damages are not referable to that verdict because an award for breach of contract will not support punitive damages. *Smith v. Piper,* 423 S.W.2d 22 (Mo.App.1967). If not, and the award for $81,650 was returned for the conversion of the collateral, then the punitive damages verdict for $75,000 rests amply and the appeal is decided. There would then be no need to contrive a fictitious judgment on an implied verdict of $1.00 [or other nominal return] upon which to rest the punitive damages as the dissent goes on to do.

■ The dissent strays into error, as I have said, because, as a means to justify the return of punitive damages, it misapplies sound principles on the construction of verdicts. It assumes it to be an "established principle of Missouri law [that] the jury's finding of punitive damages necessarily implies a finding by the jury that the plaintiffs had been the victims of the commission of a tort". There is a rule which allows a court to construe a verdict which returns punitive damages without mention of actual damages as a judgment for both the punitive and at least nominal actual reparations, *but only when the verdict is responsive to proper instructions* and when the jury intention is not clouded by other uncertainty. The cases which the dissent cites, *Adams v. St. Louis & S.F. Ry. Co.,* 149 Mo.App. 278, 130 S.W. 48 (1910) and the four others, *all* are submissions of a single tort theory under proper instructions, so that the express recitation of the verdicts that the jury had found the issues for plaintiff coupled with the return of punitive damages *necessarily* implied a finding for some actual damage. But that principle is a distance from the assumption of the dissent that "the jury's finding of punitive

damages necessarily implies" actual damage to the plaintiffs from the commission of a tort.

The basic rule, as the cases cited in the dissent show [*Lindstrom v. Kansas City Southern Ry. Co.,* 202 Mo.App. 399, 218 S.W. 936[1] (1920); *Adams, supra,* l.c. 50], does not allow punitive damages in the absence of a verdict for actual damages. The exception expressed in *Adams, supra,* and the other cases which tempers this rule proceeds on the premise that the jury *has expressly found the tort issue in favor of the plaintiff,* that is to say, that plaintiff suffered some actual damage. *Carnes v. Thompson,* 48 S.W.2d 903, 905[5] (Mo.1932).

The dissent says that the return of verdict:

"We, the jury, find the issues in favor of plaintiffs and we find that plaintiffs are entitled to punitive damages against the following defendants: Ernest Mountjoy, Mary Mountjoy, Riverside Concrete, Inc. and Frank Sambol, in the following amount: $75,000"

provides the express finding of a tort issue in favor of the plaintiff which implies a finding of at least minimum actual damage for plaintiffs to support the punitive damage award. Thus, the argument comes full circle: the verdict for punitive damages is construed to be both a determination of some tort issue in favor of the plaintiffs and thus a basis for entry of judgment of actual damages. The question arises: how can anyone tell? The cases which allow such an inference, as was shown, deal with submissions of a single recovery. The pleadings allege a miscellany of counts, including recoveries on accounting for breach of contract, conspiracy among some of the defendants for conversion of the security, conspiracy among all the defendants to defraud the plaintiffs, and conspiracy among yet other defendants to alienate and convert the security. The evidence went beyond the pleadings and the submissions for the plaintiffs were enlarged to conform to the pleadings. Thus, the instructions included one submission on the note, another

submission on the guaranty and loan agreement, and six separate instructions on one tort theory or another against the defendants, in one combination or another.

The dissent says that the return of punitive damages was responsive to Instruction No. 22 which allowed such damages on the jury finding that one of the six tort submissions was willful, wanton or malicious. One problem is that the only verdict which expressly returned actual damages was in the form for the favorable return of issue on the note and guaranty agreement. Another problem is that the return of verdict included Sambol who was never obligated on the note or contract to the plaintiffs. Still another problem is that even if construed as a legal verdict, the return on the note and contract will not support punitive damages. Most telling of all, the award for punitive damages against defendants Ernest Mountjoy, Mary Mountjoy, Riverside Concrete, Inc. and Frank Sambol were not responsive to any instruction for in no one of the six separate tort submissions is a verdict authorized against all these defendants.

 This brings the final point. The dissent reconciles these doubts by resort to the trial record to construct a judgment from the jury returns. It is basic doctrine that a verdict should be given effect if at all possible. A judgment may be written upon a verdict, however, only when the jury intention is clear and unambiguous without resort to inference. The trial record is a legitimate aid to that determination. *McIlvain v. Kavorinos*, 212 S.W.2d 85, 89[7–9] (Mo.App.1948). In order for a verdict to serve as a basis for judgment, therefore, the jury verdict should import a definite meaning. *Ralston Purina Company v. Kennedy*, 347 S.W.2d 462, 466 (Mo.App.1961). The dissent, however, does not render "the unconditional judgment of the jury" but only the interpretation it finds. *Boone v. Richardson*, 388 S.W.2d 68, 76[14–16] (Mo. App.1965). There is no sound verdict to construe, only an actual damages award against a surplus of defendants and a puni-

tive damages award returned in the abstract responsive neither to tort issue or legal instruction. The judgments proposed by the dissent rest, ultimately, on a separate judicial assessment of the evidence and the state of mind of the jury which considered it. The surmise by a court of what a jury intended which ignores what the jury actually said intrudes upon the fundamental supremacy our system accords the jury to determine fact questions. *Johnson v. Girvin's Estate*, 370 S.W.2d 163, 167[2, 3] (Mo.App.1963).

I share the concern of the dissent that a jury trial not be wasted, but in a sense each litigation transcends its own importance and must reflect a rule of law common to all, otherwise we fail the litigants and ourselves.

WASSERSTROM, Judge (dissenting).

The majority opinion refuses to give effect to the jury verdict on the ground that the verdict is uncertain in a material respect. I cannot agree that the verdict lacks reasonable certainty. To the extent that any uncertainty does exist, I believe it to be without significance and therefore immaterial.

The uncertainty found by the majority lies in its stated inability to determine whether the actual damages were awarded for breach of contract or whether on the other hand the jury made that award for commission of a tort. The majority discerns a significance in that distinction by holding that only if the jury awarded damages for commission of a tort can the verdict for punitive damages be sustained. In this regard the majority states in its opinion at page 871, *supra:* "Thus, if the verdict is construed to be a finding on the contract theory that Robinson is entitled to the principal amount due on the note, together with interest and attorney fees, such verdict could not support a verdict for punitive damages." In my view, the verdict here for actual damages should be construed as an award for breach of contract; but even so viewing the verdict, I cannot agree with the

majority that the award of punitive damages cannot be sustained. The end result should be that it makes no difference whether the award of actual damages be considered to have been made for breach of contract or for commission of a tort.

## I.

Concerning the interpretation of the award for actual damages, the record in this case compels the conclusion in my mind that the jury made the allowance for breach of contract. The strongest factor impelling this conclusion is that the verdict on actual damages tracks precisely the third form of verdict submitted to the jury under Instruction No. 25, which specifically stated that it was to be used for the purpose of bringing in a verdict "on the note and guarantee agreement." The verdict rendered is verbatim the same as the one set out in that third form of verdict, except that the jury filled in the blanks left for the amount of principal balance, the amount of interest, the amount of attorney's fees and the total sum of those three items. The identity of the verdict rendered with the third form of verdict submitted is so remarkable as to remove all reasonable doubt from my mind with respect to the jury intending to follow this particular form which had been given to it for use in order to give recovery on the contract theory.

## II.

The above construction of the award of actual damages as being based on breach of contract does not have the effect of barring recovery of punitive damages, as assumed by the majority opinion. To reach that conclusion the majority must ignore the established principle of Missouri law under which the jury's finding of punitive damages necessarily implies a finding by the jury that the defendants named in the punitive damage verdict had committed a willful, wanton or malicious tort. A crucial point in this case, upon which there can be no controversy, is that the jury did award punitive damages. This award was made pursuant to Instruction No. 22 which read as follows:

"If you find the issues in favor of plaintiffs, and if you believe that the conduct of one or more of the defendants as submitted in Instructions numbered 8, 10, 12, 14, 16, 19 was willful, wanton, or malicious, you may assess punitive damages in addition to any damages assessed under Instruction No. 21. * * * "

When the jury awarded punitive damages under that Instruction No. 22, that necessarily meant that the jury found that the defendants named in the punitive damage award had been guilty of willful, wanton or malicious tortious conduct against plaintiffs. That finding necessarily carried to plaintiffs the right to at least nominal actual damages. The lack of an award in at least a nominal amount was an error in favor of defendants of which they cannot complain on this appeal.[1]

These principles have been enunciated in a series of Missouri cases of which a leading one is *Adams v. St. Louis & S.F.R. Co.*, 149 Mo.App. 278, 130 S.W. 48 (1910), in which the court held in part:

"In this case, the court, by its instructions, required the jury, in order to find for plaintiff to find 'that defendant's brakeman willfully, violently, and with unnecessary force choked and struck plaintiff and ejected him from the defendant's passenger coach steps, and wounded or hurt him,' and the jury by finding the issues for plaintiff have found these facts to be true, and by so doing found that plaintiff was entitled to have at least, nominal damages assessed as actual damages; and when these facts were found the omission by the jury to assess any sum as actual damages was error

1. The concurring opinion states that this dissent "renders judgment for $1.00 actual damage for conversion." Not so. Although plaintiffs were entitled to that, they make no complaint. Absent complaint by the only ones having standing to object, the failure to award nominal damages is harmless error.

against plaintiff which, if he had appealed, would have resulted in a reversal of the judgment, but as to defendant it is error in its favor, and, hence, it cannot complain."

So also in *Carnes v. Thompson*, 48 S.W.2d 903 (Mo.1932) the court held:

"The verdict recites that 'the jury find the issues for plaintiff.' Upon that finding plaintiff was entitled to have actual damages in some amount assessed. *Hoagland v. Amusement Co.*, supra. This court there said (170 Mo. 345, 70 S.W. 878, 881, 94 Am.St.Rep. 740): 'The jury, in finding for plaintiff, in effect found that defendants arrested the plaintiff, and cursed and abused him, without any lawful excuse or reason therefor; and upon that finding he was entitled to have actual damages, in some amount, assessed in his favor. Under such circumstances, at the common law he is entitled to pecuniary reparation by way of damages, at least nominal, and as much more, if anything, as the jury may think him entitled to under the evidence.' "

Further holdings to the same effect were made in *Roney v. Organ*, 176 Mo.App. 234, 161 S.W. 868 (1913); *Lindstrom v. Kansas City Southern Ry. Co.*, 202 Mo.App. 399, 218 S.W. 936 (1920); *Courtney v. Kneib*, 131 Mo.App. 204, 110 S.W. 665 (1908). While, as pointed out by the concurring opinion, those cases each involved single count submission, the same principle should equally apply to a case involving multiple counts. The concurring opinion cites no authority for drawing a distinction, and I see no reason for doing so.

Under the cases just cited, the jury's award of punitive damages did supply by implication a finding that the defendants named in that verdict had been guilty of tortious conduct. That therefore supplied in effect "a separate finding on each cause of action" which the majority states to be necessary in its opinion at page 873, *supra*.

Moreover this finding by implication answers the statement of the majority in its opinion at page 873, *supra*, where it says: " Even if the verdict were not ambiguous, a finding on the note issue would not necessarily constitute a finding on the conversion or transfer of the security issue." Of course the finding on the note issue does not constitute a finding as to the tort, but the finding of punitive damages does necessarily do so.

It should be mentioned in passing at this point that there was a perfectly good reason why the jury did not bring in verdicts for actual damages in conversion under Instructions 8, 10, 12 or 14. By virtue of Instruction No. 21, a finding for plaintiffs under any of the four instructions just named called for the award of actual damages in an amount to fairly compensate them for the injury done them.[2] The jury had determined to compensate plaintiffs in full for the entire principal balance due on the note and interest thereon. Additionally, as provided in the Loan Agreement, the jury had decided to award to plaintiffs further all expenses of collection including a very substantial attorney's fee. That represented all of the actual damages that plaintiffs could possibly have had. The security withheld and converted was originally given only to secure the indebtedness, and once plaintiffs have recovered the full amount of indebtedness, that is all to which they are entitled by way of compensation. Any recovery of actual damages beyond that would represent a double recovery for the same injury. Not only would this offend common sense, but any attempt by a jury to allow such a double recovery would not be permitted to stand. *Randolph v. Simpson*, 500 S.W.2d 289 (Mo.App.1973); *Hamlin v. Flick*, 226 P. 484 (Wash.Sup. 1924).

### III.

The majority makes much of the fact that the jury included Sambol as one of the defendants against whom it awarded actual

---

**2.** Instruction No. 21 read: "If you find the issues in favor of the plaintiffs, then you must award the plaintiffs such sum as you believe will fairly and justly compensate the plaintiffs for any damages you believed they sustained as a direct result of the occurrence mentioned in the evidence."

damages. The majority opinion says that because Sambol was not a party to either the note or the indemnity agreement, that constitutes some evidence that the jury found actual damages on the theory of tort. It is upon this sole element in the case that the majority opinion erects its whole argument that the verdict is uncertain. This is expressly stated in the majority opinion at page 872, *supra*: "Because the jury commingled a finding on the note with a finding against one not liable thereon, the verdict is ambiguous."

The complete answer to this argument is that, if the jury believes the verdict of actual damages to have been based on tort, then no objection can possibly be made to the award of punitive damages. Everyone, including the appellants, concede that punitive damages can be allowed for tortious conduct of the type submitted in Instructions 8, 10, 12 and 14. Of course, as already repeatedly stated in this dissenting opinion, to my mind it makes no difference whether or not the award of actual damages was on the theory of tort.

For reasons already stated under Point II above, whether the jury awarded actual damages on contract or for tort is essentially a non-issue so far as the propriety of the allowance of punitive damages in this case. Nevertheless to the extent that a decision between these two theories is of interest, the inclusion of Sambol in the award of actual damages does not change my view expressed in Point I that the jury intended to give contract damages.

The allowance of actual damages against Sambol was simply an error committed by the jury. If Sambol had filed an appeal in this case, that allowance of actual damages against him would have to be reversed. However, he has not appealed, and the allowance against him in no way prejudices those of the defendants who have appealed. This error therefore can and should be disregarded as harmless.

### IV.

The majority opinion holds that the verdict does not dispose of all the claims submitted. So far as the tort claims against appellants are concerned, the majority restates its view that the verdict is ambiguous; and it adds that even if the verdict were not, a finding on the note issue would not constitute a finding on the tort issue. The first branch of that argument has already been answered under Point I of this dissent, and the second branch was answered under Point II.

The majority opinion further holds the verdict defective for failure to find for or against the defendants Ted Mountjoy and his company Lake Ozark Concrete, Inc. The counts against these two defendants fall within the principle, hereinabove already discussed, that the plaintiffs are not entitled to double recovery. The jury has granted plaintiffs recovery for the full balance due in the note, interest and all costs of collection. Any further damage award against Ted Mountjoy or Lake Ozark Concrete, Inc., would therefore be barred. Consequently, the inference must be drawn that the jury found against plaintiffs with respect to these two defendants.

Such a negative implication can be drawn whenever the court is "convinced that from the whole record the conclusion is irresistible that the jury did consider and determine the issue" on which an express verdict has not been returned. *North County Sch. Dist. v. Fidelity & Deposit Co.*, 539 S.W.2d 469, 476 (Mo.App.1976). In the present case, the record as a whole does lead me to the irresistible conclusion that the jury found in favor of Ted Mountjoy and his company Lake Ozark Concrete, Inc. The evidence against them was incomparably weaker than that against the other defendants on the tort theory. When the weakness of the evidence against Ted Mountjoy and his company is coupled with the fact that any actual damage against them would be duplicitous of that actually awarded against the other defendants, I am firmly persuaded that the jury purposely decided in favor of Ted Mountjoy and Lake Ozark Concrete, Inc.

What plaintiffs sought to do by their multi-count petition was to protect them-

selves through stating various alternative theories of recovery.[3] The courts have frequently held that in such instances, recovery on one theory stated in one count forecloses recovery on another theory on another count; and in such a case, a verdict against the plaintiff on a second count can be implied so as to render the judgment complete and final. *Rossen v. Rice*, 230 Mo.App. 109, 87 S.W.2d 213 (1935); *Sims v. Spelman*, 209 Mo.App. 186, 232 S.W. 1071 (1921); *Legrotta v. Pittsburgh Plate Glass Co.*, 220 S.W. 705 (Mo.App.1920); *Moore v. St. Joseph & G.I.R. Co.*, 268 Mo. 31, 186 S.W. 1035 (1916); *Moseley v. Missouri Pac. R. Co.*, 132 Mo.App. 642, 112 S.W. 1010 (1908); *Phillips v. Geiser Mfg. Co.*, 129 Mo. App. 396, 107 S.W. 471 (1908); *Akers v. Ray County Savings Bank*, 63 Mo.App. 316 (1895).

### V.

No one will disagree with the suggestions in the majority opinion as to how the instructions in this case could have been improved. However, the test to be met is not whether a perfect trial was achieved but rather whether prejudicial error occurred. No prejudice to appellants is pointed out by the majority or concurring opinion and I see none. The evidence in this case against appellants was overwhelming. The just outcome of a seven day trial should not be aborted if avoidable. That result can be avoided by simply according the jury verdict the liberal construction to which it is entitled.

I would affirm.

---

**3.** Plaintiffs are satisfied with the jury's award. The fact that they have not appealed fortifies

the conclusion that the multiple counts were in fact intended to be alternative.