**KANSAS CITY POWER & LIGHT COMPANY, Appellant–Respondent,**

v.

**BIBB & ASSOCIATES, INC., et al., Defendant,**

**Rockwell Automation, Inc., Respondent–Appellant.**

**Nos. WD 64456, WD 64480.**

Missouri Court of Appeals, Western District.

May 9, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2006.

Application for Transfer Denied Aug. 22, 2006.

William D. Beil and Randall E. Hendricks, Co–Counsel, Kansas City, MO, for appellant-respondent.

Susan F. Robertson, Columbia, Steven P. Sanders, Co–Counsel, St. Louis, MO, for respondent-appellant.

Before JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

This case involves product liability and negligence claims asserted by Kansas City Power & Light Company (KCPL) against Rockwell Automation, Inc. (f/k/a Allen–Bradley Company LLC) based on a defective Troubleshooting Guide and a defective programmable logic controller (PLC). KCPL asserted that defects in the two products caused or contributed to cause a natural gas explosion that destroyed a 12–story boiler at KCPL's Hawthorn 5 power plant on February 17, 1999. The jury returned a verdict in favor of KCPL for $452,000,000 in damages. It assessed fault at 30% to Rockwell and 70% to KCPL. The trial court entered judgment in favor of KCPL in the amount of $190,867. In entering judgment, the trial court calculated KCPL's damages as $97,622,191.16 after deductions for settlements paid by other defendants and accounting for KCPL's fault but found as a matter of law that a contractual limitation of liability provision operated to limit Rockwell's liability to KCPL to $190,867. The judgment also awarded post-judgment interest commencing on the date of the jury's verdict. KCPL appeals the judgment raising six

points. Points I, II, III, IV, and V allege that the trial court erred for various reasons in applying as a matter of law Rockwell's affirmative defense based on contractual limitation of liability. Point VI alleges that the trial court erred in failing to submit KCPL's failure to warn and instruct claims based on the Troubleshooting Guide and the Rockwell training materials. Rockwell cross-appeals raising two points. Point I of the cross-appeal alleges trial court error in the calculation of damages. Finally, point II of the cross-appeal alleges that the trial court erred in awarding post-judgment interest to commence on the date of the jury verdict rather than the date of the judgment. The judgment of the trial court is reversed, and the case is remanded with directions.

## FACTS

KCPL filed suit in April 2001 against several defendants including Bibb and Associates, Inc., Forney Corporation, and Respondent Rockwell to recover damages relating to a natural gas explosion on February 17, 1999, that destroyed the boiler at its Hawthorn 5 power plant. KCPL alleged that Hawthorne 5 employed a natural gas and coal-fired boiler to produce electric power and that the explosion caused damage to the property and other losses that exceeded $600,000,000.

KCPL alleged in its petition that beginning in 1993, various defendants were involved in the replacement of the burner management system (BMS) at the Hawthorn 5 power plant. A BMS is an electronically-controlled fuel safety mechanism that controls and monitors fuel delivery into the boiler heating system. KCPL alleged that Bibb prepared a proposal and bid specifications for the replacement

BMS; that Forney designed, produced, and installed the BMS; and that Rockwell designed and manufactured the programmable logic controller (PLC), which was utilized by the BMS. KCPL also alleged that Rockwell designed and published a Troubleshooting Guide for use in resolving operation issues involving PLCs. KCPL alleged that defects in both the design of the BMS and its components and in the Troubleshooting Guide resulted in the erroneous transmission of signals to open gas valves and to fire igniters that caused the boiler explosion.

In its answer, Rockwell denied liability and asserted thirty affirmative defenses, one of which was that Rockwell's liability for KCPL's damages was limited by the limitations of liability provision set out in the documents accompanying the sale of the product to KCPL. Thereafter, Rockwell filed a motion for partial summary judgment based on the contractual limitation of remedies defense. It asserted that the contract between KCPL and Forney for the design and installation of the BMS contained a limitation of liability provision that precluded KCPL from recovering against Forney or its vendors economic damages including but not limited to lost profits, loss of use, and the cost of replacement power. The contract terms, Rockwell asserted, also limited any remaining monetary liability of Forney and its vendors to the contract price, which was $190,867.[1] Rockwell contended that because it was a Forney vendor under the facts surrounding its sale of the PLC, the contract terms limited KCPL's recovery against it.

KCPL opposed Rockwell's motion for summary judgment and filed its own mo-

---

1. Forney also filed a motion for summary judgment based on the same argument. The motion was never ruled upon by the trial court because Forney and KCPL ultimately reached a settlement.

tion for summary judgment regarding Rockwell's limitation of liability defense. KCPL argued that Forney could not enforce the limitation of liability for several reasons and, thus, Rockwell could not enforce the limitation. Alternatively, KCPL argued that even if the provision was enforceable, Rockwell was neither a third-party beneficiary of the Forney/KCPL contract nor a vendor of Forney because The Reynolds Company, an entity unrelated to Rockwell, bought the PLC from Rockwell and sold it to Forney.

The trial court, the Honorable Jon R. Gray, entered an order denying Rockwell's and KCPL's motions for summary judgment regarding the contractual limitation of liability defense. It found that genuine issues of material fact remained in dispute and that "[t]he nature of both motions are such that the Court can re-visit each at the close of the plaintiff's evidence and/or at the close of all the evidence."

Prior to trial, KCPL filed a motion in limine to exclude the Forney/ KCPL contract and other evidence or argument concerning the limitation of liability provision. At the hearing on the motion, KCPL argued that the limitation of liability provision could not be enforced for all of the reasons previously raised in its motion for summary judgment and that whether the provision applied to Rockwell was a question of law. The trial court, the Honorable J.D. Williamson, Jr., indicated that it would not reconsider the ruling of Judge Gray on the motions for summary judgment. It noted that the applicability of the limitation of liability provision to Defendant Rockwell was an issue that did not need to be addressed at that point in the trial and that the provision, if it applied to the defendant Rockwell, would not be relevant unless a verdict were entered against Rockwell. The court further noted that the affirmative defense was not a jury

issue and that if the provision applied, the court would apply it at the end of the case depending upon the verdict and the assessment of damages. Finally, the court indicated that if the Forney/KCPL contract were relevant for any other issue other than the limitation of liability provision, or if any factual disputes existed pertaining to application of the provision, the parties should provide separate briefs regarding those issues. The court, therefore, sustained KCPL's motion to exclude the contract and other evidence concerning the limitation of liability provision, and the case proceeded to trial.

The case was submitted to the jury on four verdict directing instructions, two based on the Troubleshooting Guide and two based on the PLC. Instruction 5 submitted a strict liability product defect claim regarding the Troubleshooting Guide. It directed an assessment of fault to Rockwell if the jury believed that Rockwell sold the Troubleshooting Guide in the course of its business and the guide was defective and unreasonably dangerous when put to a reasonably anticipated use. Instruction 7 submitted a negligence design claim regarding the Troubleshooting Guide and directed an assessment of fault to Rockwell if the jury believed that Rockwell designed the Troubleshooting Guide, the guide failed to tell users to verify ASB module switch settings, and Rockwell failed to use ordinary care in the design of the guide. Instruction 9 submitted a strict liability product defect claim regarding the PLC. It directed an assessment of fault to Rockwell if the jury believed Rockwell sold the PLC in the course of its business and the PLC was in a defective condition unreasonably dangerous when put to a reasonably anticipated use. Finally, Instruction 11 submitted a negligent design claim regarding the PLC. The instruction directed an assessment of fault to Rockwell if the jury believed that Rockwell designed

the PLC; the PLC has rack addressing in the ASB modules instead of on the rack backplane, or rack address setting is by dip switches in the ASB module instead of visible switches on the front of the ASB module, or the PLC does not fault when the ASB modules are swapped between racks without changing the addresses; and Rockwell failed to use ordinary care in designing the PLC. At Rockwell's request, a comparative fault instruction was also submitted.

A general verdict form was submitted to the jury. It read, in pertinent part:

> On the claim of Plaintiff for compensatory damages, we, the undersigned jurors, assess percentages of fault as follows:
> Defendant Rockwell Automation, Inc.
> ___% (zero to 100%)
> (formerly known as Allen–Bradley Co.)
> Plaintiff Kansas City Power & Light Co.
> ___% (zero to 100%)
> TOTAL ___% (zero OR 100%)
> We, the undersigned jurors, find the total amount of Plaintiff's damages disregarding any fault on the part of Plaintiff to be $_____ (stating the amount).

Rockwell offered two alternative verdict forms including one allowing the jury to apportion fault between KCPL and Rockwell in an amount that did not total 100% and the other allowing for the jury's apportioning fault between other defendants such as Forney and Bibb who had previously settled but against whom KCPL had presented evidence of liability and fault. The trial court rejected the proposed verdict forms. Rockwell did not object to the court submitting a general verdict form for the jury to render its verdict. It did not offer an alternative verdict form requesting the jury to identify which claim or claims it assessed fault to Rockwell. It also did not request a special verdict form

so that the basis of the jury's assessment of fault against it, if any, would be known.

The jury found in favor of KCPL on March 4, 2004, awarding damages in the amount of $452,000,000 and assessing 70% fault to KCPL and 30% fault to Rockwell. Following the verdict, the trial court asked each party to submit proposed forms of judgment. On March 11, 2004, Rockwell filed an objection to entry of judgment prior to resolution of its affirmative defense of the contractual limitation of liability. In its supplemental suggestions pertaining to its affirmative defense, Rockwell argued that the trial court should find as a matter of law that the contractual limitations of remedies and damages set forth in the BMS contract applied to limit its monetary liability to the contract price of $190,867. Rockwell filed with its suggestions evidentiary support including depositions, discovery requests, affidavits, and other documentary exhibits. In response, KCPL argued that Rockwell's affirmative defense was waived because Rockwell introduced no evidence at trial in support of the defense and offered no jury instruction on the defense. It also argued that even if the defense was not waived, it did not apply to the Troubleshooting Guide claims that were submitted. The trial court could not exclude the Troubleshooting Guide claims as a basis for the jury's assessment of fault against Rockwell because the jury rendered a general verdict to which Rockwell did not object.

On May 26, 2004, the trial court entered judgment applying the contractual limitation. The court found that, after credit for settlements obtained by KCPL and assessment of fault, KCPL's damages were $97,622,191.16. The trial court also found that Rockwell's monetary liability to KCPL was limited to $190,867 because "as a matter of law ... Rockwell Automation is entitled to application and enforcement

of the limitation of remedies and damages set forth in a contract between plaintiff Kansas City Power & Light and Forney Corporation for purchase and installation of the burner management system at Kansas City Power & Light's Hawthorn generating station." Thus, the court entered judgment in favor of KCPL in the amount of $190,867 and awarded post-judgment interest commencing on the date the judgment was filed.

Thereafter, KCPL filed a motion to amend, modify, or vacate the judgment requesting the trial court to reverse its finding that the contractual limitation of liability applied for various stated reasons. With the motion, KCPL submitted affidavits from ten jurors who joined in the verdict indicating that each voted to assess fault to Rockwell in part based on the Troubleshooting Guide claims in Instructions 5 and 7. KCPL also requested that the trial court modify the judgment to allow post-judgment interest to begin from the date of the verdict as opposed to the date of the judgment.

The trial court entered an amended judgment on August 12, 2004. The judgment awarded post-judgment interest commencing on the date of the jury's verdict. The trial court's calculation of damages did not change nor did its ruling that the contractual limitation of liability applied to limit Rockwell's monetary liability to $190,867. This appeal by KCPL and cross-appeal by Rockwell followed.

## KCPL'S APPEAL

In points I through V, KCPL alleges that the trial court erred both procedurally and substantively in applying as a matter of law Rockwell's affirmative defense based on contractual limitation of liability. Specifically, in point I, KCPL contends that the limitation of liability provision did not apply to the Troubleshooting Guide claims and because the jury returned a general verdict, the trial court was unable to determine on which claim or claims the jury's assessment of fault against Rockwell was based; therefore, it should not have applied the provision to limit Rockwell's liability. In point II, KCPL contends that the affirmative defense was not supported by the record at trial and that Rockwell abandoned the defense when it failed to submit any jury instruction on it or move for directed verdict based on the defense. In point III, KCPL alleges that Rockwell could not enforce the contractual limitation of liability provision because (1) it was not a third party beneficiary of the Forney/KCPL contract and was not Forney's vendor, (2) under section 327.461, Forney was not authorized to perform engineering services in Missouri, and Rockwell's rights could be no greater than Forney's, and (3) the limitation of liability provision was not enforceable against claims for gross negligence, recklessness, fraud, and strict product liability. In point IV, KCPL alleges that application of the provision violated its rights to due process, notice, a fair hearing, and a jury trial under the Seventh and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 22(a) of the Missouri Constitution because the trial court denied its pretrial motion for partial summary judgment finding that genuine issues of material fact existed, a trial was never had on those issues because Rockwell did not present the defense at trial, and KCPL had no opportunity to rebut the defense or present its own case on the defense. In point V, KCPL alternatively claims that genuine issues of material fact were in dispute that precluded entry of judgment as a matter of law on the affirmative defense because the Forney/KCPL contract was ambiguous and whether KCPL accepted the purported limitation of liability was disputed. Finally, in point VI, KCPL alternatively al-

leges that the trial court erred in failing to submit KCPL's failure to warn and instruct claims based on the Troubleshooting Guide and the Rockwell training materials. Although some question exists whether Rockwell could enforce the limitation of liability provision of the Forney/KCPL contract, that issue is not answered in this opinion because point I is dispositive. Thus, KCPL's remaining points on appeal are not addressed.

### Standard of Review

■■■■ In reviewing a trial court's judgment notwithstanding the verdict, the evidence and reasonable inferences are viewed in the light most favorable to the jury's verdict to determine whether the plaintiff made a submissible case. *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996); *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 319 (Mo.App. W.D.2000). Where the granting of a JNOV is based on an issue of law, the trial court's conclusions are reviewed de novo. *Id.*

### Point I

KCPL contends in point I that the trial court erred in applying as a matter of law the limitation of liability provision in the Forney/KCPL contract to reduce the jury verdict to $190,867. It asserts that because the provision did not apply to the Troubleshooting Guide claims and because the trial court could not determine from the general verdict on which claims the

jury's assessment of fault against Rockwell was based, the trial court erred in applying the provision to reduce Rockwell's liability.

Rockwell concedes that the contractual limitation of liability provision did not apply to KCPL's strict liability product defect or negligent design claims based on the Troubleshooting Guide. While the PLC was purchased by KCPL as part of the BMS sale, the Troubleshooting Guide was not sold in conjunction with the BMS sale. Rather, the Troubleshooting Guide was purchased by KCPL two or three years earlier and was not part of the BMS contract documents. Claims regarding the Troubleshooting Guide were, therefore, not subject to the limitation of liability provision of the Forney/KCPL contract.

■■■ KCPL asserts that, in entering judgment based on the limitation of liability defense, the trial court must have excluded the Troubleshooting Guide claims as a basis for the jury's assessment of fault against Rockwell. It contends that nothing in the general verdict, or elsewhere in the record, indicates that the jury's assessment of liability against Rockwell was premised solely upon the PLC claims.[2] Thus, argues KCPL, the trial court's judgment applying the limitation of liability defense erroneously presumed that the general verdict was based solely on the PLC claims. KCPL is correct.

■■■■ In construing a verdict, the court determines if it can find a reasonably clear intent expressed therein. *Thorne v. Thorne,* 350 S.W.2d 754, 757 (Mo.1961),

---

**2.** In its motion to amend, modify, or vacate the judgment requesting the trial court to reverse its finding that the contractual limitation of liability applied, KCPL submitted the affidavits of ten jurors in an attempt to show that the jury's verdict was based at least in part on the Troubleshooting Guide claims. The trial court denied KCPL's request to reverse the judgment. The law is well settled that once a verdict has been rendered, a ju-

ror's affidavit attempting to impeach the verdict cannot be considered. *State v. Johnson,* 968 S.W.2d 123, 134 (Mo. banc 1998). KCPL argues, however, that the affidavits were submitted to support the verdict citing *State v. Finnell,* 280 S.W.2d 110, 115 (Mo.1955)("jurors' affidavits may be used in support of the verdict"). Regardless, the affidavits need not be relied upon to review this point.

*overruled on other grounds by Douglass Safire,* 712 S.W.2d 373 (Mo. banc 1986); *Robinson v. Riverside Concrete, Inc.,* 544 S.W.2d 865, 871 (Mo.App.1976). The verdict is construed liberally when attempting to ascertain the jury's intent. *Id.; Lewis v. State,* 152 S.W.3d 325, 328 (Mo.App. W.D.2004)(quoting *Morse v. Johnson,* 594 S.W.2d 610, 616 (Mo. banc 1980)). To serve as the basis for the judgment, the jury's verdict must be clear, intelligible, consistent, and certain. *Robinson,* 544 S.W.2d at 871. It should be responsive to all of the material issues. *Thorne,* 350 S.W.2d at 757. The verdict should impart a definite meaning free from ambiguity and should show just what the jury intended. *Robinson,* 544 S.W.2d at 871. "[T]he verdict must be clear and unambiguous so that a judgment may be written upon it without resorting to inference or to construction." *Lewis,* 152 S.W.3d at 328 (quoting *Morse,* 594 S.W.2d at 616). The parties are entitled to the unconditional judgment of the jury rather than the court's interpretation of its findings. *Robinson,* 544 S.W.2d at 871–72 (quoting *Boone v. Richardson,* 388 S.W.2d 68, 76 (Mo.App.1965), *overruled on other grounds by Douglass v. Safire,* 712 S.W.2d 373 (Mo. banc 1986)). A court may not speculate as to what the jury meant; and a verdict that requires speculation to determine its meaning cannot stand and cannot support a judgment entered thereon. *Id.* at 872; *Trimble v. Pracna,* 51 S.W.3d 481, 504 (Mo.App. S.D.2001).

■■ Section 510.230, RSMo 2000, and Rule 71.02 provide that the jury shall render a general verdict "[i]n every issue for the recovery of money only." A general verdict is a finding or pronouncement by the jury on all issues submitted to it including damages. Rule 71.01; *Thorne,* 350 S.W.2d at 757; *Robinson v. Southwestern Bell Tel. Co.,* 434 S.W.2d 249, 251 (Mo.App.

1968). Where several counts upon several distinct transactions or causes of action are joined in the same suit, a separate finding on each count should be made. *Lancaster v. Conn. Mut. Life Ins. Co.,* 92 Mo. 460, 5 S.W. 23, 26 (1887); *Robinson,* 544 S.W.2d at 873; *Rossen v. Rice,* 230 Mo.App. 109, 87 S.W.2d 213, 216–17 (1935); *Shearer v. Hill,* 125 Mo.App. 375, 102 S.W. 673, 675 (1907). However, in a case where only one transaction or cause of action exists, though stated in different counts to meet the different constructions of evidence that might be developed, a general verdict may properly be given. *Lancaster,* 5 S.W. at 26; *Rossen,* 87 S.W.2d at 216–17; *Shearer,* 102 S.W. at 675.

■■ After a verdict has been received by the court and the jury discharged, a trial court has no authority to correct or amend it in matters of substance, only in mere matters of form. *Thorne,* 350 S.W.2d at 757; *Trimble,* 51 S.W.3d at 504. If the jury has not yet been discharged, the court may, of course, require the jury to retire again to correct its verdict or find a new one in cases of defects or insufficiency. *Thorne,* 350 S.W.2d at 757. Regarding an ambiguous or insufficient verdict, the Missouri Supreme Court said in *Thorne:*

> It is such an easy matter to call the jury's attention to [an] ambiguity in the verdict at the time it is returned, and have it corrected and made absolutely definite and certain before the jury is discharged, that no room ought to be given for the rule that an uncertain or ambiguous verdict can be received and recorded, and then helped out by judicial construction when judgment is to be rendered upon it.

*Id.* at 758.

■■ In this case, four verdict directing instructions were submitted to the jury— strict liability product defect regarding the

Troubleshooting Guide, negligence design regarding the Troubleshooting Guide, strict liability product defect regarding the PLC, and negligent design regarding the PLC. A general verdict form was submitted to the jury. Though stated in four counts, KCPL's suit against Rockwell involved one and the same cause of action— KCPL's claim to recover damages for the destruction of the boiler at its Hawthorn 5 power plant. The jury's general verdict was, therefore, proper. *See Humphrey v. Chicago, B. & Q. Ry. Co.*, 151 Mo.App. 338, 131 S.W. 715, 717 (1910)(where plaintiff sued railway company for destruction of his crops by constructing insufficient culverts to permit water to pass with one count based on negligence and the second count on a statute requiring railways to construct ditches and drains, general verdict assessing damages in a single sum was proper).

Furthermore, the verdict was clear, definite, and conclusive for the purposes of supporting a judgment in favor of KCPL. It was responsive to the issues made by the pleadings and submitted in the instructions. It did not require the trial court to infer or construe any issue regarding KCPL's case or to speculate about what the jury meant. The intent of the jury to find the issues in favor of KCPL, with an apportionment of fault to both parties, and to award a certain amount of damages clearly appeared on the face of the verdict as received by the court.

The verdict, however, was not sufficient to allow the trial court to apply Rockwell's affirmative defense, the limitation of liability provision of the Forney/KCPL contract. Assuming without deciding that claims regarding the PLC were subject to the limitation of liability provision, the provision undisputedly did not apply to the Troubleshooting Guide claims. The general verdict, however, did not indicate how the jury apportioned Rockwell's liability under the theories submitted. Whether the jury's verdict against Rockwell was based on the Troubleshooting Guide claims, the PLC claims, or both was simply impossible to determine from the general verdict without speculation and construction. *See M.C. v. Yeargin*, 11 S.W.3d 604, 610–11 (Mo.App. E.D.1999)(discussing *Johnson v. St. Louis Pub. Serv. Co.*, 361 Mo. 844, 237 S.W.2d 136 (1951), *abrogated on other grounds by State Bd. Of Registration for Healing Arts v. McDonagh*, 123 S.W.3d 146 (Mo. banc 2003), and *Musielak v. Int'l Shoe Co.*, 387 S.W.2d 217, 223 (Mo.App. 1965))(where one of two instructions in each case was defective and the jury returned general verdicts, it was impossible to distinguish upon which claims the juries' verdicts were based, and, therefore, a new trial was required in each case). The verdict was ambiguous regarding the basis upon which the jury assessed liability against Rockwell. Nonetheless, the trial court applied the contractual provision limiting Rockwell's liability effectively presuming that the general verdict was based solely on the PLC claims. Such presumption, however, required speculation and was impermissible. The trial court, therefore, erred in applying the contractual provision to limit Rockwell's liability.

Rockwell contends that KCPL invited the error about which it complains in this point because it intentionally chose to submit several claims to the jury including claims regarding the PLC, which it knew may be subject to the limitation of liability provision as asserted by Rockwell. Thus, it asserts KCPL cannot now convict the trial court of error based on conduct induced and invited by it.

■ The party asserting an affirmative defense bears the burden of proof. *Warren v. Paragon Techs. Group, Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997); *Gill*

*Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 716 (Mo.App. W.D.2004). As the party asserting the affirmative defense, Rockwell, not KCPL, had the burden to posture the case to ensure that the trial court could apply its defense. The case, *Shepard v. Harris*, 329 S.W.2d 1, 6 (Mo. banc 1959), is instructive. In *Shepard*, a wrongful death action was brought against a driver for the death of a passenger. 329 S.W.2d at 4. Although the defendant driver affirmatively pleaded contributory negligence and evidence was introduced on the issue, the defendant failed to submit the issue to the jury. *Id.* at 5. The plaintiff's verdict director did not negative decedent's contributory negligence, and the defendant contended on appeal that the instruction was thereby prejudicially erroneous. *Id.* The Missouri Supreme Court held that by failing to submit contributory negligence, the defendant abandoned the affirmative defense, and the plaintiff's verdict directing instruction, which ignored such abandoned defense, was not erroneous. *Id.* at 6–7. The Court explained that a "plaintiff may recover when he has proved, in the jury's judgment, the essential elements of his case." *Id.* at 6. "If defendant does not submit a defense, even though it has been pleaded and supported by evidence, plaintiff should not be required to hypothesize for recovery any facts which go beyond plaintiff's own theory of recovery." *Id.*

 In this case, Rockwell concedes that KCPL made submissible cases on all of the claims it submitted to the jury—strict liability product defect and negligent design of the PLC and strict liability product defect and negligent design of the Troubleshooting Guide. Contrary to Rockwell's assertion, KCPL was not required to submit only the claims involving the Troubleshooting Guide if it wanted to avoid application of the contrac- tual limitation of liability provision. Application of the contractual provision to limit Rockwell's liability was Rockwell's affirmative defense. Rockwell bore the burden of prosecuting the defense. Specifically, Rockwell bore the burden of ensuring that the basis of the jury's verdict was known so that the contractual provision could be applied to the appropriate claims. Yet, Rockwell failed to object to the general verdict form either before it was submitted to the jury or after it was returned by the jury. "[A]n objection to a verdict form must be raised either at the instruction conference or when the verdict is returned by the jury before it is accepted by the court." *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 166 (Mo.App. W.D.1997). Rockwell neither objected to the general verdict form nor did it offer its own form to allow application of its affirmative defense. Furthermore, it did not request clarification of the verdict for purposes of applying its affirmative defense before the trial court received the verdict and the jury was discharged. Rockwell's failure to take any action to determine the basis of its liability under the general verdict resulted in abandonment of its affirmative defense.

 Rockwell contends that if this court finds the trial court erred in applying the contractual limitation of liability provision to the jury's general verdict, the only appropriate remedy is to reverse and remand for a new trial on all of the issues. It cites *Robinson v. Riverside Concrete, Inc.*, 544 S.W.2d 865 (Mo.App.1976), for its contention. In *Robinson*, creditors brought an action against the makers and guarantors of a promissory note and others for accounting, fraud, conversion, and replevin. 544 S.W.2d at 868–69. Two causes of action were submitted to the jury, one on the note and one for conversion of property covered by a security

agreement. *Id.* at 870–71. The jury returned a verdict in favor of the creditors and against the makers and guarantors using the verdict form applicable to the claim on the promissory note assessing damages, interest, and attorney fees. *Id.* at 870. It also awarded the creditors punitive damages. *Id.* On appeal, this court reversed the judgment and remanded the case for a new trial. *Id.* at 874. It found that the verdict was not definite and certain and, therefore, incapable of supporting a judgment thereon where whether the jury found in favor of the creditors on the promissory note or on the conversion claim was indeterminable and where one of the defendants against whom the jury found on the note could not have been held accountable thereon. *Id.* at 872–74.

*Robinson* is distinguishable from this case. In *Robinson,* the jury returned an ambiguous verdict not authorized by the court by expressly finding against a defendant who was not a party to the promissory note, thus, making it impossible to determine whether the jury made a finding on the note or on the conversion claim. *Id.* at 872–73. Unlike *Robinson,* this case does not involve a verdict requiring surmise and speculation to determine what the jury meant. The jury in this case returned a general verdict in favor of KCPL as authorized by the trial court in its verdict directing instructions. That the general verdict does not indicate on which claim or claims the jury found against Rockwell does not render the verdict ambiguous, indefinite, or uncertain for purposes of supporting a judgment in KCPL's favor. The uncertainty arises only when attempting to apply the affirmative defense of the contractual limitation of liability. As discussed above, as the party asserting the affirmative defense, Rockwell bore the burden of ensuring application of the contract provision to the proper claims. In *Robinson,* the verdict was uncertain and indefinite and could not support the judgment entered thereon; therefore, a new trial was required. In this case, Rockwell does not contend that the verdict is inconsistent or cannot support a judgment in favor of KCPL entered thereon. *Robinson* does not support the argument that this case should be remanded for a new trial. Furthermore, Rockwell does not raise on appeal any claim of error in pleading, proof, or submission of the issues. A new trial is not required. Instead, the appropriate remedy is reversal with directions to enter judgment in accordance with the jury's verdict. *See Jungerman v. City of Raytown,* 925 S.W.2d 202, 208 (Mo. banc 1996) and *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 333 (Mo. App. W.D.2000)(where trial courts erred in granting JNOVs on issues of law, judgments were reversed and cases were remanded with directions to enter judgments in accordance with the jury verdicts.) The point is granted.

## ROCKWELL'S CROSS–APPEAL

Rockwell raises two points in its cross-appeal. In point I, Rockwell alleges that the trial court erred in computing damages. In point II of the cross-appeal, Rockwell contends that the trial court erred in awarding post-judgment interest to commence on the date of the jury verdict rather than the date of the judgment.

### Point I

In point I of its cross-appeal, Rockwell asserts that the trial court erred in calculating damages. Because the trial court erred in applying the contractual limitation of liability provision and the judgment must be entered in accordance with the jury's verdict, this point is addressed.

In its judgment, the trial court calculated the damages of KCPL by first subtract-

ing the total amount of settlements obtained by KCPL from the total amount of KCPL's damages as determined by the jury ($452,000,000–$126,592,696.12 = $325,407,303.88). The court then apportioned the remaining damages according to the percentages of fault as determined by the jury ($325,407,303.88 × 30%) to reach the $97,622,191.16 judgment against Rockwell. Rockwell contends that the judgment should have been calculated by first apportioning damages between the parties according to the jury's verdict ($452,000,-000 × 30% = $135,600,000) and then reducing Rockwell's share by the amount of settlements received by KCPL from other defendants ($135,600,000–$126,592,696.12) to reach a $9,007,303.88 judgment against Rockwell. Rockwell argues that the trial court's judgment contravenes the principle of comparative fault and allows an impermissible windfall and double recovery of damages. Alternatively, Rockwell asserts that the trial court erred in rejecting the verdict forms offered by it that would have allowed the jury to either apportion fault between Rockwell and KCPL in an amount that did not equal 100% or apportion fault among other settling defendants alleged and proven at trial to be at fault for the explosion.

 The Missouri Supreme Court has decided the proper method for calculating damages, most recently in the case, *Ameristar Jet Charter, Inc. v. Dodson International Parts, Inc.*, 155 S.W.3d 50 (Mo. banc 2005). "The proper method for calculation damages is first to deduct from the total damages the amount the plaintiff received from settling defendants and then to apportion the remaining damages between the plaintiff and non-settling defendants according to their respective percentages of fault." *Id.* at 60 (citing *Jensen v. ARA Servs., Inc.*, 736 S.W.2d 374 (Mo. banc 1987)). Rockwell claims that *Ameris-*

*tar* and *Jensen* should not be followed because the respondent in *Ameristar* did not contest the applicability of *Jensen* and because *Jensen* was factually distinguishable from this case and wrongly decided. Rockwell advocates that the *Jensen* approach of settlement-reduction first needs to be revisited, modified, or abandoned in favor of the fault-reduction first method. It makes various policy arguments and cites numerous cases from other jurisdictions in urging this court to adopt another methodology. Both *Ameristar* and *Jensen* involved multiple defendants, all but one of whom settled prior to trial. *Ameristar*, 155 S.W.3d at 60; *Jensen*, 736 S.W.2d at 375. Both cases determined the proper method of calculating damage in light of settlements received from other defendants and the plaintiff's comparative fault. *Ameristar*, 155 S.W.3d at 60; *Jensen*, 736 S.W.2d at 376–78. Contrary to Rockwell's assertion, nothing in *Ameristar* indicates that the issue regarding the calculation of damages was conceded by the respondent. *Ameristar* and *Jensen* control this case. "This court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court." *Anderson v. State*, 23 S.W.3d 672, 673 (Mo.App. W.D.2000). The trial court utilized the appropriate method and properly computed KCPL's damages as $97,622,191.16.

 Furthermore, the trial court did not err in refusing to submit Rockwell's proposed verdict forms that would have allowed the jury to either apportion fault between Rockwell and KCPL in an amount that did not equal 100% or apportion fault among other settling defendants alleged and proven at trial to be at fault for the explosion. In Missouri, fault is only to be apportioned among those at trial. *Jensen*, 736 S.W.2d at 377. Section 537.060, RSMo 2000, prescribes the method of apportion-

ing a judgment against multiple tortfeasors when one defendant has obtained a release. *Gustafson v. Benda,* 661 S.W.2d 11, 15 n. 10 (Mo. banc 1983). It provides, in pertinent part, "such [release] agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater." § 537.060. Section 537.060 is inconsistent with section 6 of the Uniform Comparative Fault Act upon which Rockwell relies in making its argument. Section 6 of the UCFA reduces the amount of the plaintiff's claim against remaining defendants "by the amount of the released person's equitable share of the obligation" rather than by the amount for which the release was obtained. *Gustafson,* 661 S.W.2d at 15 n. 10. When the Missouri Supreme Court adopted the doctrine of pure comparative fault in accordance with the UCFA in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), it recognized the inconsistency between section 537.060 and section 6 and specifically deferred to the terms of the Missouri statute. *Id.* at 15 n. 10; *Schiles v. Schaefer,* 710 S.W.2d 254, 275–76 (Mo.App. E.D.1986), *overruled on other grounds by Jenson,* 736 S.W.2d 374 (Mo. banc 1987). Therefore, because section 537.060 applies, the trial court did not err in refusing Rockwell's proposed verdict directors. Point I is denied.

## Point II

In its second point on cross-appeal, Rockwell contends that the trial court erred in awarding post-judgment interest to commence on the date of the jury verdict, March 5, 2004, rather than the date of the judgment, August 12, 2004.

■ Section 408.040, RSMo 2000, provides for post-judgment interest. The purpose of the statute is "to compensate a judgment creditor for the judgment debtor's delay in satisfying the judgment pending the judgment debtor's appeal." *Johnson v. BFI Waste Sys. of N. Am., Inc.,* 162 S.W.3d 127, 129 (Mo.App. E.D.2005)(quoting *Moore v. Bi–State Dev. Agency,* 132 S.W.3d 241, 243 (Mo. banc 2004)). Section 408.040.1, RSMo 2000, provides that "[i]nterest shall be allowed on all money due upon any judgment or order of any court *from the day of rendering the same.*" (emphasis added).[3] A judgment includes "a decree and any order from which an appeal lies." Rule 74.01(a). It is "the final determination of the rights of the parties in the action." 511.020, RSMo 2000. Under Rule 74.01(a), "[a] judgment is *rendered* when *entered.*" (emphasis added). "A judgment is *entered* when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Rule 74.01(a) (emphasis added). The date of the verdict does not control the entry of the judgment. *Johnson,* 162 S.W.3d at 130. Rather, a judgment does not exist until the prerequisites of Rule 74.01(a) are met. *Id.*

■ KCPL argues that the trial court was required to follow section 510.340, RSM0 2000, which governed the filing of motions for new trial after entry of the judgment and which provided, in pertinent part, "[t]he judgment shall be entered as of the day of the verdict."[4] Rule 78.04, which also governs motions for new trial, was amended in 1994, however, to delete the phrase "which judgment shall be entered as of the date of the verdict." *Johnson,* 162 S.W.3d at 130. The deletion of the phrase indicates that the jury verdict

**3.** The statute was amended in 2005 and now provides that "in tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date of [sic]

judgment is entered by the trial court." § 408.040.2, RSMo Cum.Supp.2006.

**4.** Section 510.340 was repealed in 2005.

no longer controls the filing deadline for after trial motions. *Id.* (quoting *Nandan v. Drummond,* 5 S.W.3d 552, 555 n. 1 (Mo.App. W.D.1999)). Because the "date of the verdict" no longer applies for the purposes of calculating the timing of post-trial motions, such language may not be relied upon for purposes of post-judgment interest. *Id.* Post-judgment interest, therefore, runs from the date of the judgment, not the date of the jury verdict. *Id.*

KCPL also argues that because the trial court specifically provided in its judgment that the judgment "shall be deemed to have been entered on the date of the jury's verdict," the judgment was actually entered on the date of the verdict, March 5, 2004. KCPL cites *Walton v. U.S. Steel Corp.,* 378 S.W.2d 240 (Mo.App.1964), in making this argument. In *Walton,* judgment was entered April 25, 1961, on a jury verdict for $136,000. *Id.* In after-trial motions, defendants challenged the verdict as excessive, and the trial court ordered remittitur or a new trial. *Id.* On July 12, 1961, the plaintiff remitted the sum of $46,000. *Id.* at 240–41. On July 13, 1961, the trial court ordered the original verdict and judgment be reduced and "a new judgment be entered ... for the sum of $90,000, as and of April 25, 1961, the date of the original judgment." *Id.* at 241. After the Supreme Court affirmed the judgment in the original appeal, a dispute arose over the computation of interest. *Id.* Plaintiff contended that he was entitled to interest from the date of the original judgment, April 25, 1961, while defendants asserted that plaintiff was only entitled to interest from July 13, 1961, the rendition date of the reduced judgment. *Id.* The Court of Appeals held that the trial court had "the power and authority to enter the new judgment as of the date of the original judgment." *Id.* at 242. The court ex-

plained that the action of the court in making the new entry of judgment as of the date of the original judgment was not rendition of a *new* judgment but correction of the existing judgment to give effect to the amount remitted. *Id.* (quoting *Lasley v. Ridenour,* 265 S.W.2d 744, 745 (Mo.App.1954))(emphasis in original).

*Walton* does not support KCPL's proposition that a trial court has authority to enter a judgment effective as of the date of the prior jury verdict for purposes of post-judgment interest. First, *Walton* was decided prior to the amendment to Rule 78.04. Additionally, unlike this case, the *Walton* case involved remittitur. As explained in *Walton,* the customary and accepted practice in remittitur cases is to enter the new judgment, after remittitur, as of the date of the original judgment. *Id.* at 243. The rationale is that "[t]he amount remitted would appear to be nothing more than a credit on the original judgment." *Id.* at 242. Following such practice and presumably to prevent any dispute as to the date from which interest would accrue, the trial court in *Walton* specifically ordered the new judgment "be entered ... as and of April 25, 1961, the date of the original judgment." *Id.* at 241. In this case, the judgment was not merely a correction of an original or existing judgment as in *Walton.* The trial court did not render its judgment until several months after the jury verdict and after resolution of the legal issue regarding the contractual limitation of liability affirmative defense. Section 408.040.1, RSMo 2000, provides for post-judgment interest from the date the judgment is rendered. To hold that a trial court has authority to enter a judgment effective on some prior date would invite inconsistency in the application of section 408.040.1, RSMo 2000. The trial court rendered its judgment in this case on Au-

gust 12, 2004.[5] Interest properly ran from that date, not the date of the verdict. Rockwell's second point is granted.

## CONCLUSION

The judgment of the trial court is reversed, and the case is remanded with directions to enter judgment for KCPL in the amount of $97,622,191.16 in accordance with the jury verdict with post-judgment interest commencing on the date the court's judgment was filed.

SMART, P.J. and HARDWICK, J. concur.

---

5. The court's entry of its judgment months after the jury verdict did not necessarily leave KCPL without a remedy regarding interest from March until August. Section 408.040.2, RSMo 2000, provides for prejudgment interest, which by name allows for interest up to the date of the judgment, after certain prerequisites are met.