

# In the
# Missouri Court of Appeals
## Western District

TIMOTHY WALSH,

      Respondent,

v.

CITY OF KANSAS CITY,  MISSOURI,

      Appellant.

WD78035

OPINION FILED:

FEBRUARY 2, 2016

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert Michael Schieber, Judge**

**Before Division Three: Karen King Mitchell, P.J., Lisa White Hardwick, and Anthony Rex**

**Gabbert, JJ.**

### Introduction

The City of Kansas City, Missouri ("the City") appeals from the trial court's judgment after a jury awarded compensatory and punitive damages to Timothy Walsh on his claim of retaliation under the Missouri Human Rights Act ("MHRA").  Walsh's claim alleged that Dan Crabtree, his former supervisor, committed several retaliatory acts against him as a result of his participation in an investigation of Crabtree's purported discrimination against a coworker.

The City makes five points on appeal: (1) the trial court erred in granting Walsh's motion for partial summary judgment and directing the verdict as to the May 2011 claimed retaliation because there remained questions of material fact concerning Crabtree's knowledge of Walsh's

protected activity and whether Crabtree had other, non-retaliatory motives for committing the May 2011 claimed retaliation; (2) the trial court erred in resubmitting Verdict Form A to the jury because the jury's intent was clearly and unambiguously expressed in the original Form A; (3) the trial court erred in denying the City's motion for directed verdict because there was insufficient evidence to establish a causal connection between Walsh's protected activity and Crabtree's May 2011 claimed retaliation, and because there was insufficient evidence to show that Walsh suffered damages as a result of the May 2011 claimed retaliation; (4) the trial court erred in submitting the issue of punitive damages to the jury because a reasonable juror could not conclude that the City's conduct was outrageous because of evil motive or reckless indifference based on the evidence presented; and (5) the trial court abused its discretion in granting Walsh's attorney's fees because the fees granted were unreasonable and lacked careful consideration in that it was unreasonable for the trial court to refuse to reduce the amount in proportion to Walsh's success at trial.

We affirm the trial court's judgment.

## Factual & Procedural Background

Walsh was hired to work as a repairman in the City's Water Department in 2003 and was promoted to work as a maintenance mechanic on Dan Crabtree's crew several months later. Walsh worked under Crabtree's direct supervision with no apparent issues from that time until 2011. Prior to 2011, the City's Human Resources department approved Walsh to work "out-of-class" as a maintenance supervisor, meaning that he was approved to take on Crabtree's duties at times when Crabtree was not working. Opportunities to work out-of-class were generally rotated among approved employees on an even basis, and Walsh worked out-of-class on several occasions when it was his turn in the rotation.

2

In April 2011, one of Walsh's coworkers, John McCormack, filed a discrimination complaint against Crabtree with the City's Equal Employment Opportunity Office ("City's EEO Office" or "the EEOO"). McCormack's complaint alleged that Crabtree had made a number of religiously-offensive comments in the workplace. The EEOO began an internal investigation in response to McCormack's complaint. On April 28, 2011, Walsh served as a witness in the City's investigation and corroborated McCormack's allegations against Crabtree.

Shortly thereafter, Walsh reported to the City's HR department that Crabtree was retaliating against him as a result of his participation in the EEOO investigation. Among several other claimed acts of retaliation, Walsh reported that Crabtree denied him the opportunity to work out-of-class on May 4, 2011 and May 12, 2011, despite the fact that it was his turn in the rotation.[1] The City began an internal investigation in response to Walsh's allegations. At the same time, the City also offered Walsh a choice between resigning, transferring departments, or going to mediation with Crabtree. Walsh chose mediation, though it appears that this never occurred. Walsh also requested that Crabtree be transferred instead, though this request was denied. Walsh continued to work under Crabtree's supervision until May 16 or 20, 2012 when he reluctantly transferred to a new department.

The City's investigation of Walsh's complaint ultimately concluded that Crabtree knew of Walsh's participation in McCormack's EEOO investigation, that he retaliated against Walsh as a result, and that he "treated [Walsh] differently in the terms and conditions of [his] employment."

---

[1] Walsh's First Amended Petition pleaded several acts of alleged retaliation: (1) Crabtree gave Walsh a negative evaluation and an unjustified counseling letter commenting upon his "poor attitude" on April 28, 2011; (2) Crabtree denied Walsh the opportunity to work out-of-class on May 4, 2011; (3) Crabtree denied Walsh the opportunity to work out-of-class on May 12, 2011; (4) Crabtree gave Walsh an unjustifiably negative annual Appraisal on May 19, 2011; (5) Crabtree unjustifiably requested that Walsh be removed the out-of-class work rotation on July 6, 2011; (6) Crabtree denied Walsh the opportunity to work out-of-class on November 17, 2011; (7) Crabtree changed workplace locks making it impossible for Walsh to perform job duties on January 3, 2012; (8) Steve Zuhlke, Waste Water Services Engineering Section Head, issued Walsh an undeserved letter of reprimand on April 9, 2012; and (9) Crabtree denied Walsh overtime work on March 16, 2012.

In a letter dated February 28, 2012, a representative from the City's EEO Office relayed these conclusions to Walsh. The letter stated its finding that Crabtree had violated the City's anti-retaliation policy, which expressly prohibits discrimination and retaliation based on the opposition of "any practice prohibited by [the] Policy or made unlawful under Title VII of the Civil Rights Act of 1964, as amended, the Missouri Human Rights Act, and by the City of Kansas City, Missouri Civil Rights Ordinance." Following the EEOO's investigation of Walsh's complaints, the City suspended Crabtree; he served a 40-hour unpaid suspension from September 24-27, 2012.

Walsh filed a formal claim for retaliation against the City on March 15, 2012. Prior to trial, Walsh moved for partial summary judgment on the issue of the City's liability for the May 2011 alleged retaliation. Walsh's motion asserted that there was no dispute of material fact regarding those claims because the City admitted to the essential facts supporting them in its Answer, as well as in the deposition statements of its designated corporate representative, Kym Lewis. The trial court granted Walsh's motion and directed the verdict as to the City's liability for the May 2011 retaliation, leaving the jury to determine actual and punitive damages for those claims. The issue of Walsh's entitlement to punitive damages for the May 2011 retaliation, as well as a determination of his actual damages suffered, was eventually submitted to the jury in "Verdict Form A." At trial, Walsh also proceeded on a theory that Crabtree retaliated against him on five additional occasions between May 2011 and July 2011. The issue of liability for actual and punitive damages on these claims was eventually submitted to the jury in "Verdict Form B."

The City moved for directed verdict at the close of Walsh's evidence, arguing that Walsh had failed to demonstrate that he suffered any actual damages as a result of the May 2011 retaliation, and that he had failed to demonstrate that the May 2011 retaliation was causally

4

connected to his protected activity. The court denied this motion. The City renewed its motion for directed verdict at the close of all the evidence but did not add any new arguments at that time.

At the instruction conference, the City objected to any instructions regarding punitive damages for any of Walsh's claims, arguing that Walsh had failed to make a submissible case on the issue of punitive damages. The trial court disagreed and stated that it would allow the jury to decide the issue of punitive damages as to all claims.

After their deliberations, the jury returned Verdict Form A with an award of compensatory damages for the May 2011 claims in the amount of $524, but they did not find the City liable for punitive damages on those claims. At the same time, the jury failed to return a completed verdict form regarding the City's liability for the other alleged acts of retaliation (*i.e.*, the jury failed to complete Verdict Form B). Because the jury had expressed confusion about how to separately assess liability and damages for the individual claims listed in Form A and Form B, the trial court proposed that both Form A and Form B be resubmitted to the jury. Both parties' counsel offered suggestions about how to address the jury's confusion as to these forms, and both parties' counsel ultimately agreed to resubmit both forms to the jury.

Upon resubmission of the forms, the jury again awarded Walsh compensatory damages of $524 for the May 2011 claims, but also found the City liable for punitive damages on Form A. The jury found for the City on Form B and therefore did not award Walsh any damages as to those claims. After the second verdict had been read, the City objected to the resubmission of Form A. The court overruled this objection. The jury then heard evidence regarding punitive damages and ultimately awarded Walsh $75,000 in punitive damages for the May 2011 claims.

5

Walsh moved for an award of attorney's fees, court costs, and expenses. The City filed an objection arguing that any award of attorney's fees should be reduced to reflect the fact that Walsh only succeeded on two of his claims. The court disagreed and granted Walsh attorney's fees for the full amount requested.

This appeal follows.

## Analysis

### I. Walsh's Summary Judgment Motion

In its first point on appeal, the City contends that the trial court erred in granting Walsh's pre-trial motion for partial summary judgment and directing the verdict as to the May 2011 retaliation claims because there remained questions of material fact regarding Crabtree's knowledge of Walsh's involvement in the City's EEO investigation and whether he had other reasons for denying Walsh the May 2011 out-of-class work assignments. We find that the record presented did not demonstrate any genuine issues of material fact as to Walsh's May 2011 retaliation claims.

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, we do not defer to the trial court's decision, but instead use the same criteria that the trial court should have employed in initially deciding whether to grant Walsh's motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D. 2007) (internal citations omitted). Under Rule 74.04, the court considers the motion, the response, the reply, and the sur-reply in making a ruling on motions for summary judgment. Rule 74.04(c)(6). We review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all inferences which may reasonably

6

be drawn from the record.  *Barekman*, 232 S.W.3d at 667 (citing *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376).  Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law.  *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.  "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion."  *Id.*

Under Chapter 213, it is an unlawful discriminatory practice to "retaliate or discriminate against any other person because such person has opposed any practice prohibited by this chapter or because such person has . . . testified, assisted or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter."  § 213.070(2).[2]  Under the facts presented here, Walsh could establish a case for retaliation by showing that: (1) he participated in an investigation of alleged discriminatory activity prohibited by Section 213.070; and (2) "as a direct result, he . . . suffer[ed] any damages due to an act of reprisal."  *Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622, 625 (Mo. banc 1995).

With respect to the second element, Walsh was required to prove that Crabtree purposefully committed an act or acts of reprisal *because of* his participation in the investigation of McCormack's complaint (*i.e.*, Walsh must show a causal connection between his protected activity and the alleged retaliation).  RSMo § 213.070(2).  *See also Barekman v. City of Republic*, 232 S.W.3d 675, 682 (Mo. App. S.D. 2007) ("With respect to the latter element, [the plaintiff] must prove that the City purposely committed the act of reprisal *because of* [the plaintiff's] complaint.") (emphasis added).  Our Supreme Court has stated that if a claimant's protected activity was even one contributing factor in the defendant's decision to take an act of reprisal against the claimant, then there has been unlawful retaliation.  *See Hill v. Ford Motor*

---

[2] All statutory references are to the Missouri Revised Statutes  2012 unless otherwise indicated.

*Co.*, 277 S.W.3d 659, 664-65 (Mo. banc 2009) (applying *Daugherty* "contributing factor" standard to MHRA retaliation claims).[3]

Additionally, Walsh was also required to demonstrate that he actually suffered some damage as a result of Crabtree's alleged acts of reprisal in order to sufficiently establish the second element. *See Keeney*, 911 S.W.2d at 625. Our Missouri Supreme Court has explained that, although federal law requires a retaliation claimant to demonstrate that an "adverse employment action" has occurred ("adverse employment action" generally meaning some change in pay, benefits, seniority, responsibility, etc.), the MHRA does not:

> Section 213.070 prohibits retaliation "in any manner." To retaliate is to "inflict in return." *Webster's Third New International Dictionary* 1938 (1976). As used in the statute, retaliation includes any act done for the purpose of reprisal that results in damage to the plaintiff even though the act is not otherwise the subject of a claim in contract or tort. Retaliation . . . merely requires the commission or omission of an act as a *quid pro quo* for [engaging in a protected activity].

*Keeney v. Hereford Concrete Products, Inc.*, 911 S.W.2d 622, 625 (Mo. banc 1995).

On appeal, the City contends that Walsh was not entitled to partial summary judgment as to the May 2011 retaliation because he did not establish the required elements of a retaliation claim via genuinely uncontested facts. In essence, the City argues that Walsh did not establish the "causal connection" element as a matter of law because he did not sufficiently demonstrate that Crabtree's alleged retaliation was *because of* Walsh's protected activity. Alternatively, the City argues that even if these facts were genuinely undisputed, they were sufficient only to prove

---

[3] In *Daugherty*, our Supreme Court held that employment discrimination claims brought under Missouri law should be governed by the MHRA, which provides broader protections than those provided for in equivalent federal law. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007). Because the MHRA prohibits "**any** unfair treatment" based on a protected characteristic, the Court held that MHRA plaintiffs need not prove "that discrimination was *a substantial or determining factor* in [a discriminatory] employment decision." *Id.* (emphasis added). Instead, if consideration of a protected characteristic even *contributed* to the unfair treatment, that is sufficient to make a discrimination claim under the MHRA. *Id.*

8

that Crabtree violated the City's anti-retaliation policy, but they were not enough to support a

retaliation claim under the MHRA.[4]  We disagree.

The record in this case shows that there was no dispute as to the following material facts:

(1) Walsh participated in the City's investigation of Crabtree's alleged discrimination against

McCormack; (2) after Walsh's participation in that investigation, Crabtree denied him the

opportunity to work out-of-class on at least two occasions in May 2011; (3) Crabtree knew that

Walsh had participated in the investigation when he denied him the chance to work out-of-class;

and (4) The City admitted that Crabtree's actions were a result of Walsh's participation in the

investigation.[5]  If these facts are truly undisputed, they are sufficient to set forth a claim for

---

[4] The City cites to *Sivigliano v. Harrah's N. Kansas City Corp.* for the proposition that evidence that the retaliating party violated an organization's anti-discrimination policy is not *per se* proof of a violation of law.  *See generally Sivigliano*, 188 S.W.3d 46 (Mo. App. W.D. 2006).  However, the City ignores the broader rationale of that opinion.  The *Sivigliano* court explained that violation of a company policy *may* demonstrate an illegal discriminatory act where the claimant's petition additionally specifies "the legal provision violated by the employer, and it . . . affirmatively appear[s] from the face of the petition that the legal provision in question involves a clear mandate of public policy."  *Id.* at 49.

In *Svigliano*, the plaintiff's petition alleged only facts revolving around the employer's company policy, but not a legal provision.  *Id.*  Accordingly, we held that Svigliano's petition was insufficient to support a sexual harassment claim because it did not implicate any law or clear mandate of public policy.  *Id.*  Here, both Walsh's petition and his summary judgment motion explicitly alleged that Crabtree's actions violated the MHRA, and it affirmatively appeared from the face of his petition that the City's anti-retaliation policy involves a clear mandate of public policy—the policy itself directly references the MHRA.  *Svigliano* is therefore distinguishable from the present case.

[5] The City admitted to the following statements in its Answer to Walsh's Amended Petition for Damages:

[Walsh] provided information supporting McCormack's claims of discrimination at the workplace on or about May 4, 2011.
. . .
Crabtree was aware that [Walsh] was involved in the EEO complaint involving McCormack.
. . .
[On May 4 and May 12, 2011, Walsh] was denied the opportunity to work out of class (WOC) by Crabtree.
. . .
[R]egarding his complaint of retaliation filed in May 2011, KCMO's EEO Officer Kymberly Lewis concluded that, . . . there [was] sufficient evidence to substantiate [Walsh's] allegation that [he was] subjected to retaliation by [Walsh].  Evidence also supports that [Walsh was] treated differently in the terms and conditions of [his] employment.
. . .
[Walsh] engaged in protected activity.

retaliation because they demonstrate that Walsh engaged in a protected activity and he was retaliated against by Crabtree as a direct result, suffering damages in the form of, at the very least, a denial of work opportunities.

The record in this case does not support the City's contention that the above facts were genuinely disputed. Most compelling, the City admitted to these facts in its Answer to Walsh's Amended Petition and in its response to Walsh's summary judgment motion. "Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Pendergist v. Pendergrass*, 961 S.W.2d 919, 923 (Mo. App. W.D. 1998). Thus, the trial court justifiably considered these facts to be uncontroverted when ruling upon the summary judgment motion.

Further indicating that there was no genuine dispute as to these facts, the City explicitly admitted to the facts and acknowledged that Crabtree retaliated against Walsh in May 2011 via the statements of its designated corporate representative, Kym Lewis. As the City's duly appointed corporate representative, Lewis was obligated to truthfully testify to matters known to the City. Rule 57.03(b)(4). While acting in this official capacity, her statements were admissible against and binding on the City. *See Ashford Condo., Inc. v. Horner & Shifrin, Inc.*, 328 S.W.3d 714, 718 (Mo. App. E.D. 2010). Although we decline to state whether Lewis's deposition statements were binding judicial admissions against the City, we do note that her testimony did not refute the truthfulness of these material facts in any way.

Even when viewed in the light most favorable to the City, the record does not support a contention that there remained genuine issues of material fact as to the elements of the May 2011 retaliation claims. Under Rule 74.04, a genuine issue of material fact exists only where the

---

The City also admitted to essentially similar facts in its Suggestions in Opposition to Walsh's summary judgment motion.

10

record "contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Casey v. Florence Const. Co., Inc.*, 939 S.W.2d 36, 39 (Mo. App. W.D. 1997) (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382). Here, the City's factual admissions negate its claim that there was any genuine dispute regarding Crabtree's knowledge of Walsh's involvement with the EEO investigation. These admissions also negate any argument that Walsh's involvement in the investigation was not at least one contributing factor in Crabtree's May 2011 alleged retaliation.[6] Furthermore, although Lewis's testimony was not determinative as to the City's liability for the May 2011 retaliation, it does not support a reasonable inference that there was a genuine dispute regarding these facts because she did not actually dispute any of the facts during her deposition.

Because there was no genuine dispute as to the material facts set forth above, we find that Walsh made a sufficient showing on the May 2011 retaliation claims as a matter of law. The trial court did not err in granting partial summary judgment as to these claims. Point I is denied.

## II. Resubmission of Verdict Form A

In its second point on appeal, the City contends that the trial court erred in resubmitting Verdict Form A because the jury's intent was clearly expressed in the first verdict and the court should have entered judgment upon it in that the first Verdict Form A was unambiguous and clearly expressed the jury's intent to deny Walsh punitive damages as to his May 2011 retaliation claims. In addition to its contention that Form A should not have been resubmitted to the jury, the City seems to imply that the trial court impermissibly swayed the jury's second round of

---

[6] We reiterate that, under the *Daugherty* "contributing factor" standard, it is immaterial whether Crabtree had other, non-discriminatory motives for his May 2011 actions: if Walsh's protected activity was even one contributing factor in Crabtree's decision to take an act of reprisal against him, then there was an unlawful retaliation. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664-65 (Mo. 2009) (applying *Daugherty* "contributing factor" standard to MHRA retaliation claims).

11

decision-making on the issue of punitive damages. For these reasons, the City requests this court reverse the trial court's judgment as to Form A and remand the case with direction to enter judgment in accordance with the first verdict.[7] In response, Walsh argues that the trial court did not err in resubmitting Forms A and B to the jury because they were defective, and because both parties agreed to do so. Additionally, Walsh argues that even if the forms were not defective, the City did not preserve the issue for appeal because it did not object to the trial court's course of action before Form A was resubmitted to the jury. We agree and deny the City's second point on appeal.

Under Missouri law, "[t]he court has a duty to examine the jury's verdict to determine if the verdict is defective in any manner." *Welsh v. Burlington N. R.R. Co.*, 719 S.W.2d 793, 799 (Mo. App. E.D. 1986) (internal quotation omitted). "A verdict is not final until the jury decision is 'submitted to the court, accepted by it and assented to by the jury, and recorded by the court.'" *Van Eaton v. Thon*, 764 S.W.2d 674, 676 (Mo. App. W.D. 1988) (citing *Welsh,* 719 S.W.2d at 799). A verdict has no effect unless it is accepted by the trial court. *Franklin v. Allstate Ins. Co.*, 985 S.W.2d 893, 896 (Mo. App. W.D. 1999) (citations omitted). "This procedure guarantees the jury ample opportunity to correct any defects and misunderstanding as to the verdict." *Van Eaton*, 764 S.W.2d at 676.

In examining a jury's verdict, "the court determines if it can find a reasonably clear intent expressed therein. . . . The verdict is construed liberally when attempting to ascertain the jury's intent." *Kansas City Power & Light Co. v. Bibb & Assoc., Inc.*, 197 S.W.3d 147, 154-55 (Mo. App. W.D. 2006) (internal citations omitted) (internal quotations omitted). To serve as the basis

---

[7] Neither of the parties dispute that the first verdict was insufficient with regard to Verdict Form B, nor that the claims addressed in Form B warranted resubmission to the jury. We therefore do not address that portion of the first verdict here.

for an enforceable judgment, the jury's verdict must be responsive to all material issues and "impart a definite meaning free from ambiguity . . . ." *Id.* at 155. "The parties are entitled to the unconditional judgment of the jury rather than the court's interpretation of its findings." *Id.* Thus, a court "may not speculate as to what the jury meant; and a verdict that requires speculation to determine its meaning cannot stand and cannot support a judgment entered thereon." *Id.*

If the court determines that a jury's verdict is incomplete, inconsistent, or otherwise defective, the trial judge has discretion in how to address the apparent error. *Lindsey Masonry Co. v. Jenkins & Associates, Inc.*, 897 S.W.2d 6, 11 (Mo. App. W.D. 1995). *See also Moran v. N. County Neurosurgery, Inc.*, 714 S.W.2d 231, 233 (Mo. App. E.D. 1986) (trial judge had discretion in determining whether or not the verdict was inconsistent or vague without the plaintiff first requesting such correction). The trial court has the power and duty to require that inconsistent or defective verdicts be corrected by the jury before they are finally recorded and made part of the judgment. *Vancil v. Carpenter*, 935 S.W.2d 42, 48 (Mo. App. W.D. 1996).

In the case at bar, the trial court did not err in resubmitting Forms A and B to the jury because the original verdicts were defective in that they were not fully responsive to all of the material issues, and the jury was obviously confused as to the discrete purpose and effect of each form. Although the jury's original verdict A did demonstrate a clear intent to find for Walsh on the May 2011 retaliation claim, the questions asked during their deliberations indicated an obvious uncertainty about the relationship between Form A and Form B: on three separate occasions, the jury asked the court whether the forms were intended to address different types of damages (*i.e.*, whether Form A should only address emotional damages and whether Form B

13

should only address punitive damages).[8] These communications indicated that the jury was considering the merits and potential damages of the claims together, contrary to the trial court's repeated instructions to consider the claims separately and assess potential damages for each individual issue. As such, the original verdicts A and B were not sufficiently clear, complete, and responsive to all issues and were therefore defective, requiring both forms to be sent back for further deliberation.

Regarding the initial verdict forms, the court informed the jury that it could not accept the verdicts as written because they were incomplete or otherwise erroneous. In sending the jury back, the trial judge only pointed out to the jury that the verdicts were defective and referred them to the relevant written instructions. He carefully explained that the jury should decide whether to award punitive damages, actual damages, or no damages at all for each claim separately, and refrained from making any suggestions as to what the jury should decide. The judge acted within his discretion to correct a defective verdict and followed appropriate procedure under the circumstances. *See Van Eaton v. Thon*, 764 S.W.2d 674, 677 (Mo. App. W.D. 1988) (trial judge required jury to return and reconsider its verdicts after inconsistency or defect was brought to the jury's attention).

Additionally, both parties' counsel agreed that resubmitting Forms A and B was the appropriate course of corrective action in this situation, and the City made no objection to this

---

[8] The jury's questions regarding Forms A and B were, respectively:

Verdict "A" and Verdict "B" state, we, the undersigned jurors, find that defendant "is" or "is not" liable for punitive damages. Should A state emotional damages not punitive? Is this a typo?
. . .
Can we get clarification on how to fill out Verdict A & B? Does everyone on A sign for emotional damages that agree? Does everyone on B sign if we do/don't want punitive damages?
. . .
So we don't fill out verdict B Form if we aren't giving punitive damages and don't request trial? We have separate jurors (9) agreeing to emotional damages vs. punitive.

14

until after it had received the unfavorable second verdict. "[A]n objection to a verdict form must be raised either at the instruction conference or when the verdict is returned by the jury before it is accepted by the court." *Kansas City Power & Light Co. v. Bibb & Assoc., Inc.*, 197 S.W.3d 147, 157 (Mo. App. W.D. 2006) (quotation omitted). *See also Vancil v. Carpenter*, 935 S.W.2d 42, 48 (Mo. App. W.D. 1996) (holding that defendant waived argument that submission of erroneous verdict director warranted new trial where defendant failed to object to resubmission of corrected verdict form after mistake was discovered). "A party cannot stand idly by not making an objection and not bringing to the attention of the trial court its errors; gamble on a favorable verdict; and then, when the result is adverse, complain." *Lindsey Masonry Co. v. Jenkins & Assoc., Inc.*, 897 S.W.2d 6, 10 (Mo. App. W.D. 1995).

Here, the City first witnessed the jury's confusion regarding the verdict forms during initial jury deliberations. The City could have clarified the jury's obvious confusion about the forms by requesting additional or different instructions for each form; it declined to do so. The City also acknowledged the jury's confusion about the forms after the first verdict was returned and agreed that Form B was likely incomplete due to confusion about how to fill out *both* Forms A and B. The City could have objected to the resubmission of Form A before it was resubmitted on grounds that the original verdict was sufficiently clear as to the jury's assessment of fault and damages on the May 2011 claim; it declined to do so. In essence, the City witnessed the jury's confusion regarding Forms A and B on multiple occasions; it agreed that the jury's initial verdict was defective and likely based on confusion; and it then objected that the original Form A verdict was sufficiently clear *after* the second verdict was returned and was unfavorable to the City.

15

Although the City now argues that it did object to resubmitting Form A before it was resubmitted, the asserted "objection" was insufficient to preserve the issue on appeal. When discussing the proposed resubmission of Form A, the City's counsel stated:

> Judge, as we said off the record, there is another possibility, though remote, that maybe they are saying we agree on A but we don't agree on B and we can't get nine or so either way, for what it's worth. But I think everyone else's thought is probably correct given the other notes.

This "objection" did not assert that the initial Form A verdict was sufficient, nor argue that the verdict forms themselves were deficient in some way. Instead, the City made a vague suggestion that the jury might disagree as to Form B only—in essence, the City's counsel made a halfhearted "what if" statement which was immediately followed by an assent to the court's proposed course of action.[9] Where the City did not put this argument before the trial court in time for the court to take corrective action, it has not preserved its objection for review. *See Vancil v. Carpenter*, 935 S.W.2d 42, 48 (Mo. App. W.D. 1996) (holding that defendant waived argument that submission of erroneous verdict director warranted new trial where defendant failed to object to resubmission of corrected verdict form after mistake was discovered). *See also Lindsey Masonry Co. v. Jenkins & Assoc., Inc.*, 897 S.W.2d 6, 10 (Mo. App. W.D. 1995) ("A party who has an objection to the verdict form must make the objection known prior to the time the court submits the verdict form to the jury.").

The trial court's judgment is affirmed and the City's second point is denied.

### III. The City's Motion for Directed Verdict

In its third point on appeal, the City argues that the trial court erred in denying its motion for a directed verdict as to the May 2011 retaliation claims because there was insufficient

---

[9] Counsel for the City also asked if re-reading Instruction 7 at that time would help. Instruction number 7 related solely to Verdict Form A, which the City now argues the Court should have accepted. If the City did not want Verdict A to be returned to the jury, it seems illogical it would have offered a suggestion as to how to instruct the jury to correctly complete the form.

evidence to establish a causal connection between Walsh's protected activity and Crabtree's alleged retaliation. The City also argues that Walsh did not establish that he suffered any actual damages as a result of the May 2011 retaliation. We find that the evidence presented by Walsh was sufficient to make a submissible case of retaliation as to the May 2011 claims.

The standard of review for an appeal challenging the denial of a motion for directed verdict is *de novo*. *See Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 92 (Mo. App. W.D. 2012). "Because a directed verdict . . . should only be granted where the plaintiff fails to make a submissible case, our review is restricted to determining whether the plaintiff made a submissible case." *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 520 (Mo. App. W.D. 2007). "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Id.* at 520-21 (internal citation omitted).

"In reviewing for a submissible case, this court must accept all evidence and reasonable inferences favorable to the verdict, disregarding contrary evidence." *Id.* at 521. "When ruling on a defendant's motion for a directed verdict at the close of the plaintiff's evidence, the trial court must view the evidence in the light most favorable to the plaintiff[, who] should receive the benefit of all reasonable inferences." *In re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987) (internal citations omitted). A case "may not be withdrawn from the jury unless the facts and the reasonable inferences which may be drawn are so strongly against the plaintiff as to leave no room for reasonable minds to differ." *Id.*

As discussed above, Walsh established a submissible case of retaliation when he proved that there no material facts in dispute to the elements of his claim that: (1) he participated in an

17

investigation of alleged discriminatory activity prohibited by Section 213.070; and (2) as a direct result, he was retaliated against by Crabtree and suffered damages in the form of, at the very least, denial of work opportunities. *Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622, 625 (Mo. banc 1995). While the *extent* of Walsh's damages for the May 2011 claims was left to the province of the jury, the court did not err in denying the City's motion for directed verdict and submitting the case to the jury. The City's third point on appeal is denied.

### IV. Submission of Punitive Damages to the Jury

In its fourth point on appeal, the City contends that the trial court erred in submitting the issue of punitive damages to the jury because a reasonable juror could not conclude that the City's conduct was outrageous due to evil motive or reckless indifference in that no evidence was presented of evil motive or reckless indifference to Walsh's rights on the part of the City.[10] Walsh contends that the trial court correctly submitted the issue of punitive damages to the jury because the City did not dispute the sufficiency of the evidence regarding punitive damages in that it did not timely move for a directed verdict on the issue.

Even assuming, *arguendo*, that Walsh did not make a submissible case for punitive damages, we find that the City did not preserve this point for appeal because it did not raise an objection to the submissibility of punitive damages in its motions for directed verdict. A party may move for directed verdict at the close of the opposing party's evidence, and/or at the close of all the evidence. Rule 72.01(a)-(b). "Failure to move for a directed verdict at the close of all the evidence waives any contention that plaintiff failed to prove a submissible case." *Pope v. Pope*, 179 S.W.3d 442, 451 (Mo. App. W.D. 2005) (internal quotation omitted). "Where an insufficient motion for directed verdict has been made, a subsequent post-verdict motion is

---

[10] The City does not separately argue that the amount of the jury's punitive damage award was excessive, and we accordingly have not reviewed the award for excessiveness.

without basis and preserves nothing for review." *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. banc 2011) (internal quotation omitted). "A motion for directed verdict must state the specific grounds therefor." Rule 72.01(a). A motion for directed verdict must specifically state that it is challenging the submissibility of punitive damages to preserve the argument for appeal. *See Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 234 (Mo. App. E.D. 2009).

Here, the City made its first motion for directed verdict at the close of Walsh's evidence. This motion argued that Walsh had not sufficiently shown that he suffered *actual* damages, nor that there was a causal connection between his protected activity and Crabtree's alleged retaliation. However, the motion did not raise the issue of submissibility regarding *punitive* damages. The City renewed its motion for directed verdict at the close of all the evidence, but did not make any additional argument regarding the submissibility of *punitive* damages at that time. In reviewing the City's motions for directed verdict, it is clear that the City did not challenge the submission of punitive damages with the specificity required by Rule 72.01(a). Accordingly, because the City did not argue against submissibility of punitive damages in its motions for directed verdict, it has failed to preserve the issue for appeal.

## V. Reasonableness of Attorney Fees Awarded

In the City's fifth point on appeal, the City contends that the trial court abused its discretion in granting Walsh's attorney's fees, claiming that the attorney fees were unreasonable and lacked careful consideration. The City argues that it was unreasonable for the trial court to refuse to reduce the $346,500 amount in proportion to Walsh's success at trial. We find no abuse of discretion.

"We review the trial court's award of reasonable attorney's fees for an abuse of discretion." *Hill v. City of St. Louis*, 371 S.W.3d 66, 81 (Mo. App. E.D. 2012). We deem the trial court an expert on fees in a given case due it's familiarity with all issues in the case and the character of the legal services rendered. *See Essex Contracting, Inc. v. Jefferson Cty.*, 277 S.W.3d 647, 656-57 (Mo. banc 2009) (quoting *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980)). The trial court may determine attorney fees without the aid of evidence. *Id.* "We presume an award of attorney's fees to be correct, and the complaining party has the burden to prove otherwise." *Hill*, 371 S.W.3d at 81 (internal citation omitted). We will only reverse if it is shown that the award of attorney fees was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.* (internal citation omitted).

Appellate courts have identified several factors that trial courts should consider when making a determination as to reasonable attorney fees. *Gilliland v. Missouri Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009). These include: (1) the rates customarily charged by the representing attorneys and local attorneys who handle similar work; (2) the number of hours reasonably spent on the litigation; (3) the nature of the services provided; (4) the degree of necessary professional expertise; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) "the vigor of the opposition." *Id.*

The City filed suggestions in opposition to Walsh's motion for attorney fees at trial. Among other things, the City argued that:

> $346,500.00 in attorney fees is unreasonable under these circumstances – where Plaintiff's only success arises out of a claim on which the Court directed verdict and, where based on the award of actual damages, Plaintiff was deemed to not suffer emotional distress. This Court should reduce the amount to reflect Plaintiff's sole success on two of ten claimed acts of retaliation and sole true relief on his claim for punitive damages.

20

Walsh countered that, while the City claimed that the issues on which he prevailed were distinct from his losing claims, his prevailing retaliation claims were inextricably intertwined with his losing claims and they all emanated from a "common core of facts." Walsh further argued that all of the evidence he presented was admissible for purposes of punitive damages. He cited *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 51 (Mo. App. W.D. 2004), for the proposition that evidence of acts of the defendant other than those for which damages are sought, both preceding as well as following the particular acts, may be admissible to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed. The City replied by stating that "the mere fact Plaintiff's claims involved a common nucleus of fact does not preclude a reduction of the requested fee award." The City argued that Walsh was ignoring Missouri case law directing trial courts "in those cases involving a common core of facts or related legal theories" to focus on the significance of the overall relief obtained.

On appeal, both parties parrot these same arguments to advocate their positions. We find that the trial court was simply in the better position to apply the arguments and the law to the case at hand and we presume it did just that. The trial court heard these arguments before ever making its ruling on attorney fees and we find no abuse of discretion in the court's ultimate conclusion. The City agreed that all of Walsh's claims involved a "common nucleus of fact." "Section 213.111.2 of the MHRA allows a trial court to 'award court costs and reasonable attorney fees to the prevailing party.'" *Hill*, 371 S.W.3d at 81. "Section 213.111.2 is structured to recognize attorneys' fees as a matter of course to prevailing claimants." *Gilliland*, 273 S.W.3d at 523. "In human rights cases, the amount of the verdict or judgment may have little bearing on the amount of attorneys' fees." *Id.* While a court might consider the extent to which a plaintiff prevailed on some claims and not on others, "[t]he efforts of the prevailing attorneys . . . should

21

not be discounted where the effort and proof were the same for the claims on which [the plaintiff] prevailed and those on which [the plaintiff] did not." *Id.* at 523-24.

In essence, the City suggests that less time, resources, and expertise were expended on Walsh's prevailing retaliation claim because the trial court granted summary judgment on that claim "and no evidence was necessary to establish liability." This ignores, however, that expertise was necessary to prepare that claim for submission to the court for a request of summary judgment, and for trial in the event summary judgment was denied.

The City also argues that Walsh's attorney fee award must be reduced because, even if all of Walsh's claims arose from a common nucleus of operative facts, Walsh achieved only limited success on those interrelated claims. The City relies on our statement in *Trout v. State*, 269 S.W.3d 484 (Mo. App. W.D. 2008), that where there is "only limited success on claims based on a common core of facts or related legal theories, . . . the trial court 'should focus on the significance of the overall relief obtained.'" *Id.* at 488 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Characterizing Walsh's degree of success in this case as "limited" may be a substantial understatement. Walsh alleged that the City had retaliated against him on at least seven separate occasions. The jury rejected his retaliation claims with respect to the majority (five) of the seven alleged incidents submitted to it. As to the retaliation claim on which Walsh prevailed, the jury awarded him only $524 in compensatory damage, despite his request in closing arguments that the jury award him between $10,000 and $20,000 for that claim. (By contrast, Walsh requested between $500,000 and $700,000 in compensatory damages for the remaining five alleged acts of retaliation, for which the jury awarded him nothing.) And although Walsh asked the jury to award "at a minimum a million dollars" in punitive damages, the jury awarded less than 10% of that amount, $75,000.

22

Nevertheless, although Walsh may have achieved only "limited" success on only one of his interrelated claims, *Gilliland* instructs that where an MHRA plaintiff "prevailed on some claims and not on others," "[t]he efforts of the prevailing attorneys . . . should not be discounted where the effort and proof were the same for the claims on which [the plaintiff] prevailed and those on which he did not." 273 S.W.3d at 524. To support this statement, *Gilliland* cites to Justice Brennan's dissenting opinion in *Hensley v. Eckerhart*, 461 U.S. at 451. Therefore, while *Trout* may correctly state the views of the majority of the United States Supreme Court in *Hensley v. Eckerhart*, the Missouri Supreme Court in *Gilliland* adopted the minority position: where a plaintiff's various claims and the legal work required to substantiate those claims are interrelated and overlapping, it is inappropriate to reduce or discount the plaintiff's recoverable attorney's fees based on the fact that the plaintiff achieved only limited success on its interrelated claims.

While the jury assessed actual damages of $524 for the City's May 2011 retaliation against Walsh, the jury found that the City's conduct on those dates "was outrageous because of [the City's] evil motive or reckless indifference to the rights of others." Consequently, the jury found the City liable for punitive damages in the amount of $75,000. Thus, we cannot say that, even if the jury did not find that Walsh suffered significant compensatory emotional distress from the City's conduct on the two dates in question, the jury's award of $75,000 punitive damages was not reflective of the collective presentation of all of the evidence that shared the common core of facts. Again, the trial court was in the better position to weigh these considerations and the City has failed to meet its burden of proving that the court abused its discretion in doing so. The City's fifth point is denied.

## VI. Attorney Fees on Appeal

23

We now turn to Walsh's motion for attorney fees on appeal. Section 213.111.2 authorizes the court to award court costs and reasonable attorney fees to a prevailing party. A "prevailing party" includes one who prevails in an action brought under the MHRA, is awarded attorney fees by the trial court, and who successfully defends that favorable judgment on appeal. *See*, *e.g.*, *Hurst v. Kansas City, Missouri Sch. Dist.*, 437 S.W.3d 327, 344 (Mo. App. W.D. 2014); *Holmes v. Kansas City, Missouri Bd. of Police Com'rs ex rel. Its Members*, 364 S.W.3d 615, 631 (Mo. App. W.D. 2012). Because the City's liability for Walsh's MHRA claim and punitive damages was affirmed on appeal, Walsh may be viewed as the prevailing party here. We therefore grant Walsh's request for reasonable attorney fees and remand to the trial court to determine the reasonableness of the fees requested, and to enter an appropriate award.

## Conclusion

The trial court's judgment is affirmed in all respects for the reasons discussed herein. However, we remand to the trial court for the sole purpose of determining the reasonableness of Walsh's requested attorney fees on appeal.

_____
Anthony Rex Gabbert, Judge

All concur.